STATE, Respondent, v. SUITS, Appellant.

*No. 75–150–CR. Argued June 1, 1976.—Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 206.)

For the appellant there were briefs by *Wheeler, Van Sickle & Anderson* of Madison, and oral argument by *Norman C. Anderson.*

For the respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. Three issues are presented on this appeal:

1. Was the search warrant improperly executed, thus requiring the suppression of evidence obtained pursuant to its authority?

2. Was the search warrant invalid as facially demonstrating a lack of probable cause justification for search of the entire residential premises?

3. Was the defendant denied a fair trial by the refusal of the trial court to sever his trial from that of his codefendant?

*Warrant execution.*

On the evening of March 29, 1973, seven officers of the Dane county sheriff's department proceeded in several vehicles to a farmhouse in Mazomanie for the execution of a search warrant concerned with the controlled substance marijuana and its derivative form, hashish. None of the officers were in uniform. Detective Kretschman, the officer in charge of the warrant execution, was in the lead vehicle. He recalled that his vehicle's headlights were turned off as it entered the farmhouse driveway. The headlights of the other vehicles were apparently seen by house occupants in the kitchen.

Detective Kretschman proceeded directly to the front door of the house. In his testimony, he recalled crossing a front porch, the door of which was completely open, to a front door that was open for approximately one foot. As he approached the dwelling itself, Detective Kretschman heard music and numerous voices and concluded that a party was taking place. When he reached the partially open door to the dwelling itself, Detective Kretschman saw several people in what appeared to be a living room. He testified that these occupants were watching his approach. The officer then pushed the door open and entered. Apparently this door opened directly into the living room. Kretschman identified himself and showed his badge, mentioning that he had a search warrant. Eleven people were found on the premises.

Suits and Plaster were the only residents present at the time. They were being visited by friends and acquaintances, with card-playing and beer-drinking taking place. At the time of the police entrance, both Suits and Plaster were in the kitchen. They had just observed car lights and the announcement by Detective Kretschman occurred seconds later.

Defendant contends the execution of the search warrant was illegal due to the failure of the executing officers to announce their identity and purpose and to allow time for

the occupants to open the door before entering the premises.

The most recent pronouncement of this court involving the "rule of announcement" in execution of a search warrant is stated in *State v. Meier* (1973), 60 Wis. 2d 452, 210 N. W. 2d 685, where this court recognized that rigid compliance with the rule is not required in order for a search to be reasonable. Instead, each case must be decided on its own particular circumstances since no two cases challenging the execution of a search warrant will be factually alike.

In *Meier* the police had positive knowledge that a few days before the search, drugs were being sold on the premises occupied by the defendant. A reliable informer had purchased drugs under police surveillance. Armed with the warrant, police officers knocked on the door and the defendant responded by partially opening it. The police immediately pushed the door wide open, immobilized the defendant and then showed their authority. The trial court found that the manner of executing the warrant was reasonable. On appeal, this court affirmed the trial court's finding, stating:

"Our attention is directed to language in *Morales v. State* (1969), 44 Wis. 2d 96, 170 N. W. 2d 684, which the defendant would construe to mean that the police must always follow a set, routine procedure before entering on a premise to conduct a search. Such is not the fact, and it would be impractical to endeavor to establish such a formula. . . ." *Meier, supra,* at page 457.

Since the approach of the officers was observed, and the party noises were high, the indications to Detective Kretschman were that his knock would not have been heard and would have amounted to a useless gesture. In addition the door was open about one foot and the officers had no way of knowing that the door opened directly into the living room. The officer immediately identified himself and stated his purpose. It is difficult to maintain

that the privacy of the living room occupants was any more violated by the officers' presence inside of the threshold rather than a few feet back.

 We conclude that in view of the circumstances, execution of the search warrant in the manner described by the officers was not unreasonable.

*Validity of search warrant.*

In testimony on the motion to suppress evidence, Suits and Plaster testified that they both paid rent, as did Gatto, for the use of a separate, private bedroom and shared rights to the common areas of the kitchen, bathroom, basement, living and storage rooms. Claiming that the farmhouse is a multiple-unit dwelling, not unlike a boardinghouse, Suits argues that there existed no probable cause for the search of his bedroom and therefore the warrant purporting to authorize such action was overbroad and invalid. When the officers searched the residence, controlled substances were found in common areas and in bedrooms occupied by Suits and Gatto.

The warrant designated certain premises in Mazomanie, being occupied by Gatto "and other persons unknown," and further described as:

"A 1½ story, white frame house with yellow shutters, dark green roof and dark blue foundation surrounded by a white picket fence, located 1 mile east of Highway 78, on the north side of Dunlop Hollow Road, with an address of Rt. #1 Mazomanie, and phone number of 608–795–4402."

It is well settled that lack of prior knowledge as to the multiple residence character of a structure does not necessarily render a warrant for the whole invalid. In *United States v. Santore* (2d Cir. 1960), 290 Fed. 2d 51, the court held that federal agents did not have to retreat and obtain a new warrant when they entered defendant's house and found that he had internally modified it to take in a tenant family.

Under facts similar to those in the present case, the court in *People v. Gorg* (1958), 157 Cal. App. 2d 515, 321 Pac. 2d 143, held that a search of the entire premises was justified where the search warrant authorized the search of a lower flat and named one of the tenants as the person occupying the premises. In *Gorg* the lower flat consisted of three separate bedrooms having unlocked doors, each bedroom being occupied by a different tenant, with common areas of a bathroom, a kitchen, and a living room. The three occupants shared the latter rooms of the apartment and split the utility expenses. Each tenant paid rent to the owner.

The decision in *Gorg* is in keeping with recent cases that recognize that residences occupied by more than one unrelated individual are quite distinct from multi-unit structures and formally managed boardinghouses. All may appear to be single-family structures, and a warrant issued in ignorance of that fact is not thereby invalid. Frequently the probable cause basis for a search is activity at or shipment to that location in a manner that does not directly implicate all or exclude some.

Suits points out that the search warrant for the whole farmhouse was justified by the rather ambivalent statement of Gatto, made after a hashish sale to an undercover agent, that all the dope the agent could desire to purchase was available to him at the farmhouse. Gatto thus neither confirmed nor denied his ownership of all or part of the cache from which he could deal.

Equating Gatto with any other person whose statements may support probable cause for issuance of a warrant, Suits claims no satisfaction of the second requirement of *Aguilar*. In *Aguilar v. Texas* (1964), 378 U. S. 108, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723, the United States Supreme Court noted that the warrant affidavit should demonstrate circumstances from which it could be concluded that the information source was in a position

to gain his knowledge and was credible in this instance. Since Gatto did make the controlled substance delivery, the only question concerns the veracity and interpretation of his statement as to his future supply.

When the officers procured the warrant, they knew that Gatto resided at the farmhouse and concluded that his statement appeared credible as an admission against penal interest. Suits denies that one could reasonably infer from Gatto's statements that controlled substances were located "throughout the premises." He claims the only reasonable interpretation of their meaning is that Gatto personally possessed such quantities in those portions of the premises occupied by him. Such an interpretation overlooks the fact that Gatto simply said he had gotten the hashish from the farmhouse and referred to it as a single, integrated unit. This would reasonably indicate that controlled substances were stored somewhere on the premises, not necessarily in his room.

The search here need not stand or fall on whatever motive Gatto might have had for obscuring the fact of which tenant actually owned the material offered for future sales. Suits does not deny the probable cause lead to the house, but only to his bedroom. Gatto's assurance, after a sale of controlled substances, of future sales from a supply cached at a single residential unit he shared with unknown others is justification for a search of the whole building. As in cases where there is no link to any particular resident, there is still the opportunity of access by one tenant to each occupant's room and the appearance of collective arrangements. Concealment of evidence or frustration of purpose would result if a search warrant had to be artificially limited to an access extent less than that of the particular suspect. In this case, testimony of the officers disclosed difficulty in separating the house occupants from the party guests.

Suits himself testified that he refused to identify who occupied which bedroom.

■ The outward appearance as one residential unit and the potential opportunity for residents to have full access and cooperation even if they are not family-related has caused courts to recognize full unit searches even if there is a prime suspect. In *People v. Bell* (1972), 53 Ill. 2d 122, 290 N. E. 2d 214, a full residence search warrant was procured after a purchase of heroin from the defendant at the apartment occupied by him, his mother, his nephew and several others who rented bedrooms from his mother. Upholding the warrant designation of the entire apartment, the court noted its character as one unit for residential purposes and the ability of the defendant to have access to its various parts. Likewise, in *People v. Franks* (1974), 54 Mich. App. 729, 221 N. W. 2d 441, a member of a so-called "collective" occupying what appeared to be a single-family residence sold heroin at that location to an informant. Execution of a warrant for a search of the whole residence revealed marijuana in the defendant's bedroom. The court there held that the single-unit character of the structure, despite its multiple-person occupancy, was controlling. We think that such view is applicable in the instant case.

*Severance.*

Two arguments are raised under the broad heading of prejudice to Suits by the trial court's failure to grant a severance of his planned joint trial with Gatto. The first contention deals with the relevancy of certain evidence and the second claim allegedly concerns the right of the accused to confront witnesses against him. A review of the pertinent evidence adduced at trial furnishes the basis upon which these contentions are made.

When the officers searched the residence, the first investigation was in the north bedroom on the second floor. Documents referring to Gatto were initially used

to identify his occupancy of the room. A metal ammunition box containing approximately four ounces of hashish and three ounces of marijuana were discovered. In a bedroom across the hall, letters addressed to Suits were found. His occupancy of that room was stipulated at trial. Hashish weighing approximately four ounces and $1,300 in currency were found in a dresser. A larger quantity of hashish, weighing two pounds, was found in the bedroom closet. Approximately one and a half grams were found on Suits' person.

A storage closet at the top of the stairs to the upper bedroom area yielded over thirteen pounds of marijuana. In a locked storage closet in the basement twelve more pounds of marijuana were found in separate plastic bags in a burlap sack. A compressed "brick" of this material was among the bags and a wooden device later identified as a homemade press for making such bricks was also found in the closet. Metal parts similar to those used in the press were found scattered on a nearby pool table, as was a letter addressed to Gatto.

The state made a distinct effort to link the basement articles to Gatto. The press was put in order and the "brick" fitted in, with the scattered parts linked to the press by a bill of sale and similar price markings on both used and spare items. Finally, the letter to Gatto was reiterated as found on the table where the spares were found.

The granting or refusal of separate trials for defendants charged with offenses arising out of the same transaction or status is a matter resting largely in the discretion of the trial court. *State v. Doyle* (1968), 40 Wis. 2d 461, 469, 162 N. W. 2d 60; *Lampkins v. State* (1971), 51 Wis. 2d 564, 187 N. W. 2d 164. Sec. 971.12 (3), Stats., covers this inherent power and duty of the trial court when a joint trial prejudices a defendant. Some of the grounds assertable for separate trials are conflicting defenses, *Jung v. State* (1966), 32 Wis. 2d

541, 546, 145 N. W. 2d 684, or an entire line of evidence relevant to the liability of only one defendant which might be treated as evidence against all defendants by the trier of fact. *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155.

Suits contends that the basement area evidence was relevant only to Gatto and that its introduction against him destroyed his credibility. Specifically, Suits contends that the large cache of hashish found in his closet was dropped off at the farmhouse by an acquaintance the day before the party (Suits not being present then) while that person left the city for a time. The defendant claims he had no intention of delivering it to anyone, apparently not even the acquaintance, and that he was going to leave it at the farmhouse from which he was planning to move at the end of the month. He admitted possessing the smaller amount in his drawer for personal use. This "defense" was impaired by the introduction into evidence of the other large quantities of controlled substances, which undoubtedly revealed to the jury that a substantial drug traffic was intended by some residents.

It is clear that the "entire line of evidence" must not only be prejudicial but must also be wholly irrelevant or otherwise inadmissible against the complaining defendant. 23 C. J. S., *Criminal Law,* sec. 935 (1961). Suits assumes that the basement evidence could not have been properly admitted against him in a trial where he was the sole defendant. The trial court correctly noted that this premise was erroneous. Certainly Suits' denial of involvement with the material creates an air of irrelevancy of that evidence to him, but the self-serving nature of such testimony hardly is conclusive on a crucial fact that was in issue, *i.e.,* possession of the bulk contraband. The strength of the evidence connecting the material to Gatto does not prevent the state from raising the question as to Suits' complicity with him or even of his sole ownership of the cache, for the location of the single Gatto

correspondence near the spare parts does not preclude an innocent coincidence.

A more serious question is presented in regards to the testimony of federal agent Joel Gutensohn. Two days prior to the warrant execution, as briefly indicated previously, Gatto made a sale in Madison of two ounces of hashish to the undercover agent and a police informant. According to the agent's trial testimony, he discussed further purchases from Gatto, who assured him that he "had more at his place."

After the agent started testifying, but just before he discussed the facts of the sale itself, the court interjected:

"Now, as a further caution to the jury, I shall explain that this evidence is being admitted only insofar as it has any probative value upon the question of motive, opportunity, intent, preparation, plan, knowledge of the defendant Gatto in regard to the charge."

Only Gatto objected to the officer taking the stand and counsel for Gatto responded to the court's instruction by requesting a further instruction that the evidence to be admitted "does not go to prove any of the possession of the items in Mazomanie" except that in his room. The court stated that the question was for the jury to decide. Suits made no objection to the agent taking the stand or to any of his testimony on the sale.

The timely warning of the trial court, the failure of any objection or further instruction and the clear lack of a relation to Suits makes this situation, as in *Cullen v. State* (1965), 26 Wis. 2d 652, 655, 656, 133 N. W. 2d 284, not one where an entire line of evidence by Gutensohn's testimony was admitted to the prejudice of Suits.

Suits' claim that the use of Gatto's conversation at trial effectually made Gatto a witness against him without the right to cross-examination is without merit. Unlike abstract instructions at the close of trial, the court timely

warned the jury to consider the testimony only as to Gatto. The record reflects that Suits made no attempt, as did Gatto, to insure that untoward inferences would not be drawn from testimony that clearly was not directly against him. This is a tardy complaint. There is no direct confrontation clause violation and any possibility that testimony on Gatto's conversation could have an inference of being testimony against Suits was due mainly to his own inaction at that time.

We conclude the trial court did not abuse its discretion in denying defendant's motion for severance.

*By the Court.*—Judgment and order affirmed.

DAY, J., took no part.