STATE, Respondent, v. JENNARO, Appellant.

No. 75–795. *Argued March 3, 1977.—Decided March 29, 1977.*
(Also reported in 251 N. W. 2d 800.)

500

For the appellant there was a brief by *Franklyn M. Gimbel* and *Gimbel, Gimbel & Reilly* of Milwaukee, and oral argument by *Franklyn M. Gimbel*.

For the respondent the cause was argued by *William L. Gansner*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

HEFFERNAN, J.  The defendant-appellant, James Jennaro, and a co-defendant, Leroy Bell, who is not a party to this appeal, were found guilty, after a trial by jury, of soliciting a female to practice prostitution contrary to sec. 944.32, Stats., and sec. 939.05 (party to a crime). Jennaro was sentenced to a year's confinement in the House of Correction. Sentence was stayed, and he was placed on probation for two years conditioned on serving the first year under the Huber Law[1] and the payment of a thousand dollar fine.

On this appeal no objection is raised as to the sufficiency of the evidence. It is argued, however, that the conviction should be reversed, because of the trial judge's

[1] We note that the trial judge here incorrectly used the term, "Huber Law," rather than, "condition of probation." See *Yingling v. State*, 73 Wis.2d 438, 439, 243 N.W.2d 420 (1976).

failure to grant a motion for severance of the trial of Jennaro from that of the co-defendant Bell, for errors in the course of trial, for prosecutorial misconduct, and in the interest of justice because of the alleged cumulative effect of the claimed errors. We affirm the judgment.

The motion for severance was made prior to trial, and again during trial when counsel for Jennaro asserted that the course of evidence demonstrated that his client and the co-defendant Bell could not be fairly tried together.

Initially it is apparent that joinder was proper under the standards set by sec. 971.12(1), (2), and (4), Stats.:

"971.12 Joinder of crimes and of defendants. (1) Joinder of Crimes. Two or more crimes may be charged in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan. When a misdemeanor is joined with a felony, the trial shall be in the court with jurisdiction to try the felony.

"(2) Joinder of Defendants. Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting one or more crimes. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

"(3) . . .

"(4) Trial Together of Separate Charges. The court may order 2 or more complaints, informations or indictments to be tried together if the crimes and the defendants, if there is more than one, could have been joined in a single complaint, information or indictment. The procedure shall be the same as if the prosecution were under such single complaint, information or indictment."

The American Bar Association Standards Relating to the Administration of Criminal Justice, *Joinder and Severance,* sec. 1.2, p. 5, provides:

"1.2 Joinder of defendants.

"Two or more defendants may be joined in the same charge:

"(a) when each of the defendants is charged with accountability for each offense included;

"(b) when each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy; or

"(c) when, even if conspiracy is not charged and all of the defendants are not charged in each count, it is alleged that the several offenses charged:

"(i) were part of a common scheme or plan; or

"(ii) were so closely connected in respect to time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others."

In the instant case the evidence, believed by the jury, showed that Bell was a bartender of a tavern known as the Tender Trap. Jennaro was the manager of Sally's Steak House. The evidence adduced at trial showed that, on at least two occasions, Jennaro called Bell at the Tender Trap asking that the prostitute, Katherine Erbach, come to Sally's Steak House and ask for Jennaro. Jennaro then introduced the prostitute to the prospective trick.

In this case Jennaro and Bell were charged in the same complaint for the same alleged crime, involving the same woman, the same transaction, and the same proof. Allegedly, the crime was a part of a common scheme or plan. Each defendant was tried as a party to the same offense. It was within the power of the court to try these defendants together. Nevertheless, even though a joint trial may be legally appropriate, under some circumstances it may constitute an abuse of judicial discretion.

Sec. 971.12(3), Stats., provides:

"(3) Relief from Prejudicial Joinder. If it appears that a defendant or the state is prejudiced by a joinder of crimes or of defendants in a complaint, information or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. The district attorney shall advise the court prior to trial if he intends to use the statement of a codefendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant."

The granting or denying of severance is within the sound discretion of the court. *State ex rel. Nickl v. Beilfuss,* 15 Wis.2d 428, 113 N.W.2d 103 (1962); *State v. Nutley,* 24 Wis.2d 527, 129 N.W.2d 155 (1964), *cert. denied* 380 U.S. 918; *Cullen v. State,* 26 Wis.2d 652, 133 N.W.2d 284 (1965). Nevertheless, as this court said in *State v. DiMaggio,* 49 Wis.2d 565, 182 N.W.2d 466 (1971), severance should be granted where a line of evidence is produced which is admissible only as to one defendant and is unduly prejudicial to the other. We said in *DiMaggio:*

"If it appears during the course of the trial that a good deal of evidence applicable to only one defendant is being developed, the trial judge has an option. He may order a severance at that time . . . or the court may elect to give the jury a cautionary instruction to the effect that evidence against one may not be treated as evidence against all, simply because they are being tried together." (at 577)

Where the evidence is admissible as to both defendants, there is no prejudice, since such evidence could be introduced at separate severed trials. *Jung v. State,* 32 Wis.2d 541, 145 N.W.2d 684 (1966).

Bearing in mind these general principles, it is apparent that most, although not all, of the evidence in this case was applicable both to Jennaro and to Bell.

There is no evidence that the trial judge abused his discretion when he initially declined to order separate trials. During the course of the trial, however, the admitted prostitute, Erbach, testified that she told Bell that she had talked to Department of Justice agents, but she also told Bell that she had told those agents nothing. She stated that Bell responded, "That's good because if you had told them something, you might get yourself killed." Jennaro's counsel, alternatively, moved for the testimony to be stricken, for an admonition to the jury, for a mistrial, or for severance. The objection was made on the grounds that the statement, although admissible against Bell, was inadmissible hearsay in respect to Jennaro. Counsel for Jennaro asserted:

". . . under my view of the law under the conspiracy section that would not be a conversation in furtherance of a conspiracy. It has [no] application to my client and that my client can't get a fair trial in this case."

Initially, the trial judge permitted this testimony to stand on the grounds that it was a statement by a co-conspirator and was, accordingly, admissible in respect to Jennaro, as well as to Bell. On postverdict motions, however, the trial court concluded that, if there were a conspiracy, it had terminated at the time Bell's threat was made and, accordingly, was not admissible as a hearsay exception permitted by sec. 908.01 (4) (b) 5, Stats.[2]

---

[2] "908.01 (4) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if:

"(b) *Admission by party opponent.* The statement is offered against a party and is:

"5. A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

The trial judge found, however, that, although the admission of the testimony of Bell's threat was error, any possible prejudice was cured by his admonitions during the course of trial and his instructions to the jury prior to the submission of the case. He found the error harmless. The state on this appeal agrees that the admission of the testimony was error, but also urges that any potential prejudice was cured by the judge's admonitions and by the jury's instructions, and, therefore, the error was harmless.

The trial judge said in his decision on postverdict motions that, after the questioned testimony in respect to Bell was introduced, he told the jury:

" 'The jury will keep in mind that there are two defendants and, of course, on the testimony as it's introduced, you will try to separate in your mind, for the present at least, testimony given with respect to one defendant as against testimony given with respect to the other.' "

In further explanation, the judge in his opinion on postverdict motions said:

"The Erbach statement referred only to Bell and no reasonable inference could have been drawn by a fair-minded jury that it included Jennaro. To have given a specific instruction at that juncture of the trial would have overemphasized the statement with its application to Bell.

"The Court, however, in the closing instruction told the jury that the jurors were to determine which one of the defendants was guilty and which one was not, 'or,' the jury was told, 'You may find both defendants guilty of the charge or you may find both defendants not guilty of the charge.'

"The jury was further instructed that the State had to prove by evidence beyond a reasonable doubt that 'each defendant intended that the crime of prostitution be committed,' and 'that each defendant advised Katherine Erbach . . . to commit the crime of prostitution and did so under circumstances which indicate that they

actually did intend that such words or expressions or acts result in the commission of the act of prostitution.'

"The Court is of the opinion, therefore, that the error of receiving the Erbach statement and the failure to give a more specific instruction during the trial was erased by the instructions of the Court given during and at the close of the trial."

This postverdict recitation by the trial judge of his admonitions and instructions during the course of trial is supported by the record. It is the general rule in this state that limiting and admonitory instructions are presumed to cure the prejudicial effect of erroneously admitted evidence. *State v. Lindsey,* 53 Wis.2d 759, 193 N.W.2d 699 (1972) ; *Taylor v. State,* 52 Wis.2d 453, 190 N.W.2d 208. Further, as in the instant case, where the questioned testimony does not go directly to the defendant's guilt, it should be considered in context to determine whether the error was harmless beyond a reasonable doubt. *Paulson v. State,* 118 Wis. 89, 94 N.W. 771 (1903) ; *Harris v. State,* 52 Wis.2d 703, 191 N.W.2d 198 (1971).

In addition to the admonitions and instructions pointed out in the trial judge's decision, the record shows that the jury was given four separate verdict forms—a guilty and not guilty verdict in respect to each individual defendant. The jury was instructed:

"You may find one defendant guilty of the charge and another not guilty of the charge or you may find both defendants guilty of the charge or you may find both defendants not guilty of the charge."

" . . .

"If you find beyond a reasonable doubt from the evidence in this case that each defendant as parties to a crime with intent that the crime of prostitution be committed advised Katherine Erbach to practice prostitution under the circumstances which indicate that he had sufficient intent, then you should find that defendant or both defendants guilty of soliciting a prostitute as charged.

"If, however, you are not so satisfied, then you must find that defendant or both defendants not guilty."

The questioned testimony, although inadmissible hearsay in respect to Jennaro, was not directed at all to the question of Jennaro's guilt. In addition, the admonitions and instructions of the judge alerted the jury that the testimony elicited could be probative of the guilt of one defendant but not necessarily of the other, and that the guilt of each defendant was to be considered on an independent basis. The instructions repeatedly referred to each defendant in the singular, and there is no intimation in the instructions to the jury that any of the evidence was to be applied in a blanket fashion to both defendants.

The trial judge correctly concluded that, in accordance with the standards of *Lindsey* and *Taylor, supra,* his instructions and admonitions presumptively cured whatever prejudicial effect might have resulted by the admission of hearsay that was inadmissible in respect to the guilt or innocence of Jennaro.

Under *Chapman v. California,* 386 U.S. 18 (1967), the United States Supreme Court stated that, before a federal *constitutional* error can be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (at 24) This standard of *Chapman* was specifically reaffirmed in *Harrington v. California,* 395 U.S. 250, 254 (1969). Under the *Chapman* test, it is apparent beyond a reasonable doubt that the error complained of did not contribute to the guilty verdict in respect to Jennaro. Under the test apparently applicable to nonconstitutional error, set forth in *Kotteakos v. United States,* 328 U.S. 750 (1946), and recently restated in *United States v. Agurs,* 427 U.S. 97, 49 L. Ed.2d 342, 96 S. Ct. 2392 (1976), the error is equally harmless, because it is clear that the error did not influence the jury or had only slight effect. See *Kelly v. State,* 75 Wis.2d 303, n. 2.5 at 317, 249 N.W.2d 800,

(1977), and concurring opinion at 321. Under any test, the error was harmless.

Under the circumstances, we conclude that the trial court properly denied Jennaro's motions for severance before and during trial and that no prejudice resulted to Jennaro as a result of the joinder or as the result of evidence adduced in the joint trial.

In addition, the defendant argues that he was irretrievably prejudiced by prosecutorial misconduct and overreaching during the course of trial and also during closing argument. At trial, Agent Himberg testified in respect to the investigation. The district attorney asked Agent Himberg, "What was your assignment with regard to the investigation of this case?" Counsel for Jennaro objected to the question on the ground that the agent's assignment was immaterial. According to the record, the court then asked the agent whether he had specific duties in regard to his assignment. Upon the witness' response that he had specific duties, the court asked, "What was that?" Agent Himberg responded, "Those duties as directed by my supervisor was to work jointly with the organized crime section of the Milwaukee County District Attorney's office in an undercover capacity."

This statement, which counsel now claims irretrievably prejudiced the jury because it sought to connect Jennaro with organized crime, was not objected to immediately, apparently because counsel concluded that an immediate objection would unduly emphasize the reference to organized crime. At the first opportunity, however, outside of the presence of the jury, counsel for Jennaro moved for a mistrial or, in the alternative, an admonition to the jury. The motion was granted in the alternative, and the court complied with counsel's motion by striking the

testimony of Agent Himberg in its entirety and by admonishing the jury.[3] The judge advised the jury:

"Members of the jury, you are to disregard all of the testimony given by this last witness, and you are not to consider it in determining the guilt or innocence of either or both of the defendants."

It is doubtful, moreover, that the statement of Himberg was prejudicial, for the alleged improper remark did not bear on the guilt of either defendant. The defendant relies on *United States v. Marrero,* 486 F.2d 622 (7th Cir. 1973), for the proposition that Jennaro was irretrievably prejudiced. In that case, however, the government agent was permitted to testify that his agency kept a file on "major violators" and that there was a file in respect to the defendant then being tried. It is apparent that the agent's prejudicial testimony in *Marrero*—which in effect was the statement of the government's belief that Marrero was an habitual major criminal and of bad character—was of an entirely different nature and quality from the statement objected to here.

In *State v. Escobedo,* 44 Wis.2d 85, 170 N.W.2d 709 (1969), this court held that the trial judge's admonition to the jury obviated prejudice to the defendant where a police officer stated that he knew the defendant from prior contact with the police.

We are satisfied that the trial judge's specific admonition to the jury to disregard all of Himberg's testimony and his additional instructions advising the jury to disregard stricken testimony foreclosed any possibility of prejudice to Jennaro.

---

[3] It should also be pointed out that, under sec. 270.39, Stats., a party cannot question on appeal a ruling given which he specially sought.

In addition, Jennaro claims that the prosecutor made prejudicial statements during the course of arguments to the jury. The record, however, reveals no objection by the prosecutor during the course of closing argument. The first reference to any prejudicial statements allegedly made by the prosecutor in closing argument appears in the defendant's postverdict motions. We have frequently stated that we will not review alleged prejudicial statements in closing argument when there was no record made of the argument and objection was not timely made. *Smith v. State,* 65 Wis.2d 51, 221 N.W.2d 687 (1974). We have made exceptions to this general rule where an allegedly improper remark was set forth in postverdict motions and admitted by the prosecutor to be accurate. *State v. Tew,* 54 Wis.2d 361, 195 N.W.2d 615 (1972). In the instant case, however, there is no evidence of record that the prosecutor agreed with defense counsel's restatement of the remarks to the jury. Nor has the accuracy of the statement been conceded by the state on this appeal.

We accordingly decline to review this claim of alleged prosecutorial misconduct.

The defendant on this appeal at no time argues that the evidence believed by the jury was insufficient to sustain a conviction beyond a reasonable doubt. Although assertion of insufficiency of evidence was made, without particularization, in motions after verdict (see *Escobedo v. State, supra*), the objection is not reasserted on this appeal. The defendant does, however, claim that, because of cumulative errors and the minimal proof of guilt, the judgment should be reversed and the defendant granted a new trial in the interest of justice.

We are satisfied, from a review of the entire record, that none of the errors asserted were individually preju-

dicial; nor, when considered cumulatively, can we conclude that the defendant has not had a fair trial. Justice has been served by this conviction, and it is clear from the evidence that the defendant, Jennaro, was, on the occasions charged, engaged in soliciting a woman to engage in prostitution. Under optimum circumstances and an error-free new trial, there is no reasonable probability that a jury would acquit. We have stated in *Lock v. State,* 31 Wis.2d 110, 118, 142 N.W.2d 183 (1966):

"In order for this court to exercise its discretionary power under sec. 251.09, Stats., it should clearly appear from the record that for some reason it is probable there has been a miscarriage of justice. In order for this court to exercise its discretion and for such a probability to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial." (at 118)

*By the Court.*—Judgment affirmed.