STATE of Wisconsin, Plaintiff-Respondent,

**v.**

Percy BROWN, Defendant-Appellant.†

Court of Appeals

*No. 83–212–CR. Submitted on briefs July 20, 1983.—*
*Decided August 22, 1983.*

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *William J. Tyroler,* assistant state public defender of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Kirbie Knutson* of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J. Percy Brown (Brown) appeals from a judgment of conviction entered June 11, 1982, following a jury trial wherein he was found guilty of armed robbery, party to a crime, contrary to secs. 943.-32(1)(b) and (2) and 939.05, Stats. Brown also appeals from an order entered January 19, 1983, wherein the trial court denied his postconviction motion for a new trial. Because we hold that the trial court erred by refusing to sever Brown's case from the case of a codefendant, Michael Bowen (Bowen), we reverse and remand the cause for a new trial.[1]

On January 21, 1982, a sandwich shop located at 1622 West Wells Street in the city of Milwaukee was robbed. Kristian Seals (Seals) testified that, at approximately 10:40 p.m., three black men entered the shop and demanded that he give them all the money. Seals stated that one of the men, whom he later identified as Brown, jumped over the counter, pulled out a revolver and demanded all the money from the cash register. After removing the money from the cash register, Brown and another man, whom he later identified as Bowen, told Seals to open the safe, whereupon they took loose currency and change from the safe. The three men then left the shop.

Brown's girlfriend, Lisa Hughbanks (Hughbanks), testified that on January 21, 1982, Brown came to her house at approximately 8:30 p.m. Hughbanks stated that

[1] We note that on appeal Brown also raises an issue regarding a requested identification instruction; however, because our determination of the severance issue is dispositive of this appeal we need not address this other issue.

Brown telephoned Bowen from her house at about 9:00 or 9:30 p.m. Hughbanks further stated that Bowen came to her house and that Brown and Bowen left together at approximately 10:00 p.m.

Bowen's mother testified that on January 21, 1982, he left her home at approximately 9:00 p.m. in a taxicab. Bowen told his mother that he was going to an east side restaurant to work in place of his brother Roosevelt, who had a toothache. Bowen's mother further testified that when Bowen left he was carrying with him a rather large portable radio.

Richard Osborn (Osborn) testified that he was a cook at a restaurant located on the east side of Milwaukee. Osborn further testified that Bowen entered the restaurant on January 21, 1982, between 10:00 and 10:30 p.m. Osborn stated that he was sure of the time because Bowen was supposed to replace his brother Roosevelt and he was late. He also stated that Bowen was carrying a large portable radio. At approximately 11:30 p.m., Bowen and Osborn got off work and Bowen gave Osborn a ride home. Osborn testified that Brown was waiting for Bowen in the car.

The restaurant manager, Jenny Kaminski (Kaminski), testified that she saw Bowen carry a large portable radio onto the premises at approximately 10:50 p.m., on January 21, 1982. Kaminski stated that she was sure of the time because she always looks at the clock when an employee comes to work to make sure he or she is on time. Kaminski also stated that she saw Brown enter the restaurant a minute after Bowen and that Bowen and Osborn left together sometime after 11:30 p.m.

Brown testified that on January 21, 1982, at approximately 8:35 p.m., he went to Hughbanks' home. Brown stated that he telephoned Bowen and at about 10:00 or 10:30 p.m., they took a taxicab to the east side restaurant. Brown stated that they remained at the restaurant until

closing and they left in a car belonging to Bowen's brother which was parked in a lot across from the restaurant.

Brown and Bowen were tried together. At trial, following the close of the state's case-in-chief, an in-chambers conference was held to establish the number of Bowen's prior convictions. During this conference, the state informed the trial court and the other parties that it intended to cross-examine Bowen regarding the circumstances surrounding his arrest, i.e., he was arrested in a stolen car with a shotgun and had been convicted of another robbery.

The trial court ruled that the state could question Bowen on these matters. Following this ruling, Bowen's attorney stated that Bowen would not testify. At this point, Brown moved for a mistrial because he had based his defense on the assumption that Bowen would testify and establish his whereabouts at the time of the offense. Brown argued that the two cases should be severed and tried individually. The trial court denied Brown's motion, stating that it was improper for him to have based his defense on the assumption that a codefendant would testify.

Brown raised the same issue in a postconviction motion. As support for this motion, Brown filed an affidavit of Bowen's attorney stating that Bowen would freely and willingly testify on Brown's behalf at a severed trial to establish his whereabouts. The trial court again denied Brown's motion to sever, stating that Brown was not prejudiced by the trial court's refusal to sever because Bowen's testimony would have been merely cumulative evidence.

On appeal Brown argues that he was denied his due process rights to a fair trial, presentation of a defense, and compulsory process by the trial court's refusal to sever.[2] We agree.

---

[2] U.S. Const. amend. VI and XIV; Wis. Const. art. I, § 7.

A trial court has the power to try defendants together when they are charged with the same offense arising out of the same transaction and provable by the same evidence. *See* sec. 971.12 (2), Stats.; *Haldane v. State,* 85 Wis. 2d 182, 189, 270 N.W.2d 75, 78 (1978). Generally, questions of consolidation or severance are within the trial court's discretion. On review, the decision of the trial court will not be disturbed unless there has been an abuse of discretion. *Id.* What constitutes an abuse of discretion depends upon the facts of each case; and, although a single trial may be desirable from the standpoint of economical or efficient criminal procedure, the right of a defendant to a fair trial must be the overriding consideration. *Jung v. State,* 32 Wis. 2d 541, 545–46, 145 N.W.2d 684, 686–87 (1966), *cert. denied,* 386 U.S. 999 (1967). Circumstances may present themselves where a joint trial would be unduly prejudicial to the interests of either or both of the defendants. In such a situation, the interests of administrative efficiency must yield to the mandates of due process. *Haldane, supra,* at 189, 270 N.W.2d at 79.

Where a motion to sever is based on the asserted need for a codefendant's testimony, the moving defendant must establish the following: (i) a bona fide need for the testimony of his codefendant; (ii) the likelihood that the codefendant would testify at a second trial and waive his fifth amendment privilege; (iii) the substance of his codefendant's testimony; and (iv) the exculpatory nature and effect of such testimony. *United States v. Parodi,* 703 F.2d 768, 779 (4th Cir. 1983); *United States v. Butler,* 611 F.2d 1066, 1071 (5th Cir.), *cert. denied,* 449 U.S. 830 (1980); *Byrd v. Wainwright,* 428 F.2d 1017, 1019–20 (5th Cir. 1970). Given such a showing, the court should (i) examine the significance of the testi-

mony in relation to the defendant's theory of defense; (ii) assess the extent of prejudice caused by the absence of the testimony; (iii) pay close attention to judicial administration and economy; (iv) give weight to the timeliness of the motion, and (v) consider the likelihood that the codefendant's testimony could be impeached. *Parodi, supra,* at 779.

Applying the above factors which Brown must establish, we conclude that Brown has clearly met the test first enunciated in *Byrd, supra.* The record establishes that there definitely was a bona fide need for this testimony. Bowen's testimony would establish that he was with Brown at an east side restaurant at the time the offense occurred.

As to the likelihood that Bowen would testify at a severed trial, it has been stated that the movant is not required to establish such willingness to an absolute certainty. A reasonable probability that the proffered testimony would, in fact materialize and that the codefendant would have waived his fifth amendment right at a separate trial is sufficient. *Parodi, supra.* We believe that it is reasonably probable that Bowen would testify for Brown at a severed trial. Indeed, Brown's postconviction motion contains an affidavit of Bowen's trial counsel which states that prior to trial she had intended to call Bowen as a witness in his own behalf and she apprised Brown's trial counsel of this fact. She further states in her affidavit that, had the trial been severed, Bowen would have been willing to testify on Brown's behalf because his own guilt or innocence would not be at stake.

We conclude that Brown also established the substance of Bowen's testimony at the in-chambers conference before the trial court. We also conclude that Brown established the exculpatory nature of this proposed testimony.

The requirement that the movant establish the "exculpatory nature and effect" of the codefendant's testimony demands more than a vague and conclusory statement by counsel of facts of purely cumulative or negligible weight or probative value. The showing must be sufficiently definite for a determination by the trial court of the testimony's "exculpatory nature and effect." *Id.* at 780. The showing must be such as to establish that the moving defendant will be denied a fair trial without severance, not merely that a separate trial would offer him a better chance of acquittal or an opportunity to proffer evidence which merely contradicts part of the state's proof. *Id.*

Here, Bowen's evidence corroborated Brown's alibi defense. Bowen's testimony would have established that he and Brown were at the east side restaurant continuously from the time they left Hughbanks' home at approximately 10:00 p.m. until it closed. While Kaminski's testimony established that Brown was at the restaurant from approximately 10:50 p.m. until closing, only Bowen's testimony establishes their whereabouts from the time they left Hughbanks' until they left the restaurant. Contrary to the trial court's ruling, this testimony is clearly not cumulative. Therefore, we hold that Brown has made the initial showing as required by *Byrd, supra,* and its progeny.

■
Having held that Brown has made the initial showing, we must next apply the factors enunciated in *Parodi, supra,* at 779, to this showing. We determine that Bowen's testimony was clearly significant to Brown's theory of defense. Brown's entire defense was based on an alibi, which Bowen's testimony would help establish. We also determine that the absence of this testimony substantially prejudiced Brown. His alibi defense relied upon the corroboration of Bowen.

While we are mindful of the importance of judicial efficiency, we conclude that, because of the substantial prejudice to Brown here, administrative efficiency must yield to Brown's due process right to a fair trial. *Haldane, supra.* We are also of the opinion that the timeliness of the motion for severance and the possibility of impeachment of Bowen's testimony do not outweigh the prejudice caused to Brown by the absence of this testimony.

Accordingly, we hold that the trial court should have granted Brown's motion for mistrial and severed the trials. The denial of this motion was clearly an abuse of discretion because of the substantial prejudice caused Brown by the absence of this testimony.

*By the Court.*—Judgment and order reversed and cause remanded for a new trial.