STATE of Wisconsin, Plaintiff-Respondent,†

v.

PATRICIA A. M., Defendant-Appellant.

Court of Appeals

*No. 91–0105–CR. Oral argument March 17, 1992.—Decided April 22, 1992.*

(Also reported in 484 N.W.2d 380.)

† Petition to review granted.

726

On behalf of the defendant-appellant there were briefs and oral argument by *Michael W. Tobin* of Milwaukee.

On behalf of the plaintiff-respondent there were briefs by *James E. Doyle,* attorney general, and *Marguerite M. Moeller,* assistant attorney general. There was oral argument by *Marguerite M. Moeller.*

Before Brown, Anderson and Snyder, JJ.

SNYDER, J. At their joint trial, a jury found Patricia A. M.[1] and her husband David guilty of ten counts of sexual assault and one count of incest with a child, all as party to a crime.[2] The charges involved Patricia's eight-year-old son Jeremiah and Tony, an eleven-year-old neighbor boy. Patricia argues that the trial court erred by refusing to sever her trial from her husband's or, in the alternative, by failing to give the jury a limiting instruction, thus prejudicing her separate interest. In addition, Patricia raises two multiplicity issues.

We conclude that the joint trial was prejudicial because damaging evidence, irrelevant as to Patricia, was admitted and the limiting instruction required by *State v. DiMaggio,* 49 Wis. 2d 565, 577, 182 N.W.2d 466, 473, *cert. denied sub nom., Pipito v. Wisconsin,* 404 U.S. 838 (1971), once severance is denied was not given. We therefore reverse on the severance issue and remand for a new trial. We are unpersuaded by Patricia's multiplicity arguments, however, and so affirm that determination.

Testimony at trial elicited the following facts. On August 25, 1989, Tony spent the night at Jeremiah's. The two boys were showering together when Patricia entered the bathroom, reached past the shower curtain, and fondled both boys' genitals for several minutes.

---

[1] We are masking the identity of the defendant to shield the victims of this sensitive crime.

[2] David's conviction is not part of this appeal.

After their shower, the boys entered the living room on their way to their bedroom. The living room also served as Patricia's and David's bedroom. Patricia was sitting naked on an opened sofa bed; David was on a cot a few feet away. Patricia directed each boy to take turns engaging in various sex acts with her, both individually and simultaneously, while David watched. David did not get physically involved but occasionally verbally encouraged the boys' actions. The entire episode, bathroom to living room, took place over approximately one hour.

At trial, Jeremiah and Tony testified to all of the behavior alleged against Patricia. Jeremiah proved to be a reluctant witness, however, in testifying about any behavior involving David.[3] Both David's and Patricia's theory of defense was that the boys fabricated the entire scenario, gaining their knowledge of sexual matters from pornographic movies viewed at Tony's birthday party some months before.

The state then called as a witness Dr. Paul Gochis, a physician on the Sexual Assault Program team in the emergency department at a local hospital. Dr. Gochis had examined Jeremiah when the investigation first began. Dr. Gochis testified over defense counsel's objection that Jeremiah related to him conduct alleged in the complaint as well as uncharged instances of sodomy by David. Dr. Gochis stated that Jeremiah demonstrated this conduct for him by using anatomically correct dolls. Dr. Gochis also testified that upon physically examining Jeremiah, he found anal scarring and loss of anal sphinc-

---

[3]Jeremiah grew particularly noncommittal when the questioning turned to David's role—active or passive—in any sexual activity with him. Specifically in regard to anal contact or intercourse, Jeremiah either stated he did not remember or flatly denied that he and David ever engaged in that activity.

ter tone, and that such findings suggested repeated anal penetration. Dr. Gochis opined that this physical evidence was consistent with Jeremiah's statement that David had sodomized him. The medical report describing the physical evidence was admitted as "other acts" evidence under sec. 904.04(2), Stats. Jeremiah's alleged statements about David's acts were admitted as a prior inconsistent statement under sec. 908.01(4)(a)1, Stats.[4] His alleged statements about Patricia's acts were admitted as a prior consistent statement under sec. 908.01(4)(a)2.

Twice pretrial, Patricia unsuccessfully moved to sever her trial from David's, objecting to Dr. Gochis' testimony about evidence pertaining to the uncharged sexual abuse, asserting that it was relevant only to David. Subsequent motions for mistrial also were denied. Likewise, her sec. 809.30, Stats., motion seeking postconviction relief on the issues of severance and admission of "other acts" evidence was denied.

## SEVERANCE

Patricia first argues that admission of Dr. Gochis' medical testimony was relevant only to David and thus made the potential for jury confusion so great that severance was necessary to a fair trial. Specifically, she complains that admission of Dr. Gochis' testimony regarding anal contact could have been wrongly viewed by the jury as evidence of her guilt in the charged crimes. In the alternative, she argues that absent severance, the court should have cautioned the jury to disregard as to her the

---

[4]Jeremiah testified that he remembered making statements to Dr. Gochis but claimed not to remember what he told the doctor.

medical evidence relating to David. We agree that the court erred in not employing one of those options.

A trial court has the power to try defendants together when they are charged with the same offense arising out of the same transaction and provable by the same evidence. Section 971.12, Stats.; *State v. Brown,* 114 Wis. 2d 554, 559, 338 N.W.2d 857, 860 (Ct. App. 1983). Granting or denying severance is left to the sound discretion of the trial court. *State v. Jennaro,* 76 Wis. 2d 499, 505, 251 N.W.2d 800, 803 (1977). Absent an abuse of discretion, we will not disturb the trial court's ruling. *Brown,* 114 Wis. 2d at 559, 338 N.W.2d at 860. What constitutes an abuse of discretion depends upon the facts of each case. *Id.* Although a single trial may be desirable from the standpoint of economical or efficient criminal procedure, "the right of a defendant to a fair trial must be the overriding consideration." *Id.*

Severance generally is considered appropriate in "line of evidence" cases—cases where a body of evidence is relevant to the liability of only one of the co-defendants—because of the risk that the trier of fact may treat all of the evidence as evidence against both defendants. *State v. Suits,* 73 Wis. 2d 352, 361–62, 243 N.W.2d 206, 211 (1976); *see also* sec. 971.12(3), Stats. Our supreme court has defined the trial court's role in line of evidence cases. In *State v. DiMaggio,* 49 Wis. 2d 565, 182 N.W.2d 466, *cert. denied sub nom., Pipito v. Wisconsin,* 404 U.S. 838 (1971), the court held:

> If it appears during the course of the trial that a good deal of evidence applicable to only one defendant is being developed, *the trial [court] has an option. [It] may order a severance at that time or the court may elect to give the jury a cautionary instruction* to the

732

> effect that evidence against one may not be treated as evidence against [both], simply because they are being tried together.

*Id.* at 577, 182 N.W.2d at 473 (citation omitted; emphasis added).

At oral argument, the state contended that the trial court's failure either to sever or to caution the jury was not error because, as a threshold matter, there did not develop a "*good deal* of evidence." *Id.* (emphasis added).[5] Not only do we disagree, but this position is contrary to the state's own brief. In its brief, the state argued that the challenged evidence would have been admissible against Patricia in a separate trial. The state then urged this court to "assign substantial probative value to the medical evidence" because Jeremiah was a poor witness on the stand and because the medical evidence was "the only physical evidence corroborating Jeremiah's statements to Dr. Gochis."

We fail to see how this evidence possesses "substantial probative value" yet does not constitute a "good deal" of evidence. We do not here decide if *DiMaggio* establishes that the trial court must determine as a threshold matter whether there exists a "good deal" of evidence. Whether or not it does, we conclude that a "good deal" of evidence existed here and agree with the state that this evidence possesses "substantial probative value," thus triggering the further requirement that the court either sever or issue an admonitory instruction.

---

[5]At oral argument the state attempted to minimize the evidence by pointing out that it constituted only a small portion of a 1300-page transcript. We see this, however, as a question of quality, not quantity. Brevity may be more than the soul of wit: a witness' unembellished "He's the man I saw" may constitute extremely critical evidence in the lengthiest of trials.

The supreme court expressly noted that severance based on line of evidence grounds may not seem warranted prior to trial because at that stage it often is difficult for the trial court to ascertain "exactly what evidence [is] applicable to whom." *Id.* Furthermore, once a joint trial is underway, severance may prove to be a practical impossibility because of the time, resources and energy the parties and the court already have invested. If the trial court thus elects either before or during trial not to sever, the cautionary instruction option becomes critically important because realistically, it may remain the sole safeguard of a potentially prejudiced defendant's right to a fair trial.

Here, Patricia moved twice for severance, clearly stating the grounds. The trial court denied both motions, as was within its discretion to do. The challenged evidence was then presented at trial. When it became clear that a "good deal of evidence" pertaining only to David was developing, it became incumbent upon the court to instruct the jury as directed by *DiMaggio.*[6]

A defendant has a due process right to a fair trial. *See Brown,* 114 Wis. 2d at 559, 338 N.W.2d at 860. "[D]ue process is an exact synonym for fundamental fairness." *In re D.M.D.,* 54 Wis. 2d 313, 318, 195 N.W.2d 594, 597 (1972). Fundamental fairness demands that a jury receive proper instructions which fully and fairly inform it of the law it is to apply. *See State v. Hurd,* 135 Wis. 2d 266, 275, 400 N.W.2d 42, 46 (Ct. App. 1986).

---

[6]It is immaterial that Patricia did not request a limiting instruction because *State v. DiMaggio,* 49 Wis. 2d 565, 182 N.W.2d 466, *cert. denied sub nom., Pipito v. Wisconsin,* 404 U.S. 838 (1971), places no burden on a co-defendant to make such a request. Once the trial court denied Patricia's severance motions, it was duty-bound to follow up with a limiting instruction.

The instructions also must assist the jury in analyzing the evidence. *State v. Waalen,* 125 Wis. 2d 272, 274, 371 N.W.2d 401, 402 (Ct. App. 1985).

The state concedes no limiting instruction was given here and that the trial court expressly found no evidence of a conspiracy between David and Patricia. Thus, the trial court should have assisted the jury by giving a limiting instruction. Such an instruction would have helped the jury analyze the evidence which pertained only to David. Fairness to Patricia and to the jurors deciding her fate demands that much.

*DiMaggio* notwithstanding, the state argues that even though severance was not granted and the limiting instruction not given, we still may affirm the trial court. Citing *Suits,* the state contends that the line of evidence must be more than prejudicial; it also must be wholly irrelevant or otherwise inadmissible against the complaining defendant. *Suits,* 73 Wis. 2d at 362, 243 N.W.2d at 212. In other words, the state asserts that if the evidence could have been admitted at Patricia's separate trial, she suffered no prejudice at her joint trial. *See Jennaro,* 76 Wis. 2d at 505, 251 N.W.2d at 803.

We are not persuaded. The evidence suggesting anal penetration *is* irrelevant as to Patricia. It relates to none of the charges against her. There was no suggestion by the trial court or any of the parties that the information contained in the medical report involved Patricia, and the trial court found that no conspiracy existed between David and Patricia. Furthermore, Dr. Gochis testified that Jeremiah reported anal contact only with David. We fail to see how "other acts" of David would have been admissible against Patricia at a separate trial.

Moreover, we do not read *Suits* as dispensing with the requirement that a cautionary instruction be given. There, the court expressly concluded that admitting the line of evidence did not prejudice the complaining co-defendant—in part because of the "timely warning of the trial court." *Suits,* 73 Wis. 2d at 363, 243 N.W.2d at 212.

We thus conclude that while the denial of severance may have been a proper exercise of discretion, the trial court ultimately erred. We reiterate that in a line of evidence case where the trial court has denied severance, the trial court is then bound to give—*sua sponte,* if necessary—a *DiMaggio*-type instruction to the effect that evidence against one defendant cannot be considered against the other simply because they are being tried together.

## MULTIPLICITY

Next, Patricia claims that the charges against her are multiplicitous, thus violating the double jeopardy provisions of the state and federal constitutions. Patricia was convicted as party to a crime on ten counts: counts 1 and 2 alleged penis contact; counts 3 and 4 alleged fellatio; counts 5 and 6 alleged that she caused each boy to have contact with her breasts; counts 7 and 8 alleged sexual intercourse; and counts 9 and 10 alleged cunnilingus. She also was convicted on an eleventh count, incest with a child. Counts 1, 3, 5, 7, 9 and 11 pertained to Jeremiah; counts 2, 4, 6, 8 and 10 pertained to Tony.

First, Patricia asserts that the first-degree sexual assault charges—counts 3, 4, 5 and 6—are multiplicitous because the acts of fellatio and breast contact, which allegedly occurred simultaneously, were part of the same general transaction or episode.

Multiplicity exists when a defendant is charged in more than one count for a single offense. *State v. Hirsch,* 140 Wis. 2d 468, 471, 410 N.W.2d 638, 639 (Ct. App. 1987). Whether charges are multiplicitous is a question of constitutional fact which we review *de novo. Id.* at 470–71, 410 N.W.2d at 639. To make that determination, we must ascertain whether the charges are identical in law and fact, and what the legislature intended regarding the allowable unit of prosecution under the statute. *Id.* at 471, 410 N.W.2d at 639–40. The overall test is one of fundamental fairness or prejudice to the defendant. *Id.* at 471–72, 410 N.W.2d at 640.

As to identity in law, counts 3 and 4 are identical in law because both allege fellatio with a child under the age of thirteen. Likewise, counts 5 and 6 are identical in law because both allege that Patricia caused a child under the age of thirteen to have contact with her breasts.

As to identity in fact, however, although counts 3 and 4 both allege fellatio, each involves a different boy, thus requiring proof of an additional fact. Similarly, counts 5 and 6 allege that the same act—breast contact—occurred with different boys. When different victims are involved, generally there is a corresponding number of distinct crimes. *State v. Rabe,* 96 Wis. 2d 48, 67, 291 N.W.2d 809, 818 (1980). Patricia urges us to depart from this general rule, contending that despite the existence of two victims, separate charges are inappropriate under *Hirsch* because the alleged acts were part of the same general transaction or episode. We disagree.

In *Hirsch,* the defendant was convicted of three counts of first-degree sexual assault for allegedly touching a five-year-old girl's vaginal area, then her anal area

737

and then her vaginal area a second time. The court of appeals reversed, ruling the charges multiplicitous. Noting that the episode took no more than a few minutes with little, if any, lapse of time between the alleged acts, the court stated that it could not say that the touchings were not part of the same general transaction or episode, or that " 'the defendant had sufficient time for reflection between the assaultive acts to again commit himself.' " *Hirsch,* 140 Wis. 2d at 475, 410 N.W.2d at 641 (quoting *Harrell v. State,* 88 Wis. 2d 546, 560, 277 N.W.2d 462, 467 (Ct. App. 1979)). The court concluded that the alleged acts were "not 'so significantly different in fact that they may be properly denominated separate crimes.' " *Id.* at 474, 410 N.W.2d at 641 (quoting *State v. Eisch,* 96 Wis. 2d 25, 34, 291 N.W.2d 800, 805 (1980)).

Here, the complaint and testimony stated that one boy allegedly had contact with Patricia's breasts at the same time that Patricia was performing fellatio on the other boy. Those acts are significantly different enough to be considered separate crimes. Also, unlike the brief assault in *Hirsch,* here the activities spanned an hour, giving Patricia time to reflect upon her conduct.

The first prong of the multiplicity test satisfied, we next turn to whether the legislature intended separate punishments for committing the same violation of sec. 948.02(1), Stats., against two different child victims. Patricia offers no discussion on this point. The state, by contrast, persuasively argues that the intent to permit separate punishments is evident by the statute's placement in ch. 948, Stats., "Crimes Against Children." We agree that the legislature could not have intended for a defendant who sexually assaults numerous children in one continuous episode to be subjected to the same pun-

738

ishment as a defendant who assaults only one child. We therefore conclude that counts 3, 4, 5 and 6 are not multiplicitous.

Patricia's second multiplicity claim is that counts 1, 3, 5, 7 and 9 are lesser included offenses of count 11, incest with a child. Patricia did not raise this issue prior to her appeal, however. Having failed to do so, she did not preserve the issue for our review. *See State v. Hartman,* 145 Wis. 2d 1, 9-10, 426 N.W.2d 320, 323 (1988).

*By the Court.*—Judgment and order reversed and cause remanded.

BROWN, J. *(dissenting in part).* I agree with the majority opinion as regards the multiplicity issue. I dissent from that portion of the opinion denominated as the "severance" issue.

The majority's decision, in a nutshell, is as follows: In *State v. DiMaggio,* 49 Wis. 2d 565, 577, 182 N.W.2d 466, 473, *cert. denied sub nom., Pipito v. Wisconsin,* 404 U.S. 838 (1971), our supreme court ruled that, when it appears during the course of a trial involving co-defendants that one line of evidence is applicable to only one defendant, the trial court has the *sua sponte* duty to give the jury a cautionary instruction. This instruction should state that the jury is not to visit that one line of evidence against the other defendant. Here, the physician's testimony regarding anal scarring went only to David, the husband. It was irrelevant as to Patricia. The evidence was substantial and prejudicial to Patricia. Although no cautionary instruction was requested, the trial court had the duty to give one anyway under the facts of the case. Therefore, Patricia's conviction must be reversed.

I disagree with this reasoning. The *DiMaggio* rule applies only when the solicited evidence is applicable to but one of the defendants. Here, the physician's testimony regarding anal scarring was not irrelevant to Patricia, as claimed by the majority. Rather, the whole of Patricia's defense was that her son fabricated *all* sexual charges as part of an ongoing rebellion by the child against *both David and Patricia.* Throughout the trial, Patricia continually attacked her son's credibility by assigning improper motives to him. She was helped by her son's recalcitrance on the witness stand.

That being the case, the physician's testimony was helpful to rehabilitate the son's testimony. The testimony presented the jury with physical evidence supporting the son's allegations that sexual activity occurred. This very fact was noted by the trial court. In answering an objection to the physician's testimony on grounds tangentially related to the issue here, the court explained that the statements made by the child to the physician were admissible under sec. 908.01(4), Stats., because the statements were consistent with the child's trial testimony. Thus, they would rebut the charge of improper motive. Alternatively, the court noted that some of the child's testimony was inconsistent with the statements made by the child to the physician. Thus, the prosecutor was using the statement to impeach the state's own witness by showing that the witness made statements contrary to those adduced at trial. Thus, given the state of the record, I am convinced that the physician's testimony was applicable to Patricia and the *DiMaggio* rule is inapposite.

There is another reason why this is not a *DiMaggio* case. The rule was designed for those cases where a "good deal of evidence" applicable to only one defendant is being developed such that the trial court's pretrial

decision denying severance is in jeopardy. Often, trial judges do not have the necessary information before trial to determine the quantum of evidence going only to one defendant which will be irrelevant to other defendants. The *DiMaggio* rule was obviously designed to help trial judges by allowing them to choose to declare a mistrial and order the cases severed when such a situation comes to light. It also gives the alerted trial judge the opportunity to continue the trial with the proviso that an admonitory instruction be given to the jury. It is a good guideline for trial judges.

After having read the record, however, I am unpersuaded that there was that kind of evidence giving fair warning such that an admonitory instruction would have to be considered. There are about 1300 pages of transcript. The physician's testimony took up about thirty pages. Of that, only a portion deals with the physical findings and what the child demonstrated by use of an anatomical doll in regard to the anal intercourse allegations. I agree with the state that we are not faced with a "good deal of evidence." We have before us a small portion of one witness' testimony in the course of a trial lasting several days.

Finally, there is a third reason why *DiMaggio* should not be the underpinning for a reversal in this case. Any error was harmless. I note that there was no effort by the state to exploit the physician's testimony to say that Patricia was somehow responsible for the anal scarring, either as a direct participant or as an aider and abetter.

Also, I note that the evidence of sexual assault by Patricia against her son was overwhelming to the point where there is no reasonable belief that the outcome would be different had this instruction been given. While it is the usual case that claims of sexual assault by a child

against an adult come down to a credibility battle between the two, this is not the case here. A third party, a disinterested witness, saw Patricia and her son engaging in sexual acts. It happens that a neighbor girl, a friend of the son's, walked in on Patricia, David and the son on another occasion. She observed the victim and both parents unclothed and engaged in acts of sexual contact with Patricia's breasts. I find this to be startling evidence. I cannot believe, for a second, that failure to give an admonitory instruction to the jury concerning a small part of a doctor's testimony would have affected how the jury viewed this case. I have no hesitancy in deciding that the supposed error was harmless beyond a reasonable doubt. I would affirm the conviction.