COURT OF APPEALS
DECISION
DATED AND FILED

March 13, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2176-CR**

STATE OF WISCONSIN

Cir. Ct. No. 1994CF330

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL A. MALDONADO,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Jefferson County: ROBERT F. DEHRING, JR., Judge. *Affirmed in part and reversed in part; cause remanded with directions*.

Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael Maldonado appeals an order denying his motion for sentence modification without an evidentiary hearing. For the reasons stated below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2 After an 11-day jury trial in April 1995, Maldonado was convicted of first-degree intentional homicide, as party to the crime.

¶3 The evidence at trial showed that Maldonado, Douglas Vest, and Joshua Yanke shot and killed Ruben Borchardt in his home. Ruben was going through an acrimonious divorce with his wife, Diane Borchardt.[1] Diane, who was a teacher's aide in a local high school, told Vest, one of her students, that she would give him her engagement and wedding rings, two vehicles, and $20,000 to kill Ruben, and the day before the murder, Diane gave Vest approximately $600. Vest enlisted the help of Maldonado, who is Vest's cousin, and Yanke, who was Vest's classmate. Maldonado was 15 years old at the time of the murder; Vest and Yanke were 16 years old.

¶4 Maldonado, Vest, and Yanke were tried separately. At Maldonado's trial, both Vest and Yanke testified that after they initially failed to gain entry to Ruben's home, Vest and Yanke said that they should leave. Vest testified, "[W]e started walking towards the car and at that time [Maldonado] grabbed the gun and just said let['s] do it." Yanke testified, "So we were turning around and going away; and then [Maldonado] grabbed the gun and said: Let's go do this, we're

---

[1] For clarity, we refer to Ruben Borchardt and Diane Borchardt by their first names.

here to do it so let's go." Vest and Yanke both testified that Maldonado took the gun from Vest, found an unlocked door, and entered the home, with Vest and Yanke following.

¶5 Vest testified that it was Maldonado who shot Ruben. Yanke testified that he did not witness who the shooter was because he had left the home by the time that Ruben was shot but that, from where he was outside, he saw Maldonado carrying the gun when Maldonado exited the home.

¶6 Maldonado testified for the defense. Maldonado denied any involvement in the murder and testified that at the time of the murder he was at home sleeping. The jury found Maldonado guilty of first-degree intentional homicide, as party to the crime.

¶7 In June 1995, Maldonado was sentenced to life imprisonment with a parole eligibility date of April 3, 2044.[2] In its remarks at the sentencing hearing, the sentencing court emphasized the fact that it was Maldonado who shot Ruben. We discuss the court's statements at sentencing in greater detail below.

---

[2] Vest, Yanke, and Maldonado were all sentenced by the same judge. Pursuant to a plea agreement, Yanke pled guilty to second-degree intentional homicide and agreed to cooperate with the State's investigation and to testify in Vest's and Maldonado's trials. Yanke was sentenced to 18 years in prison.

In May 1995, Vest was convicted after a jury trial of first-degree intentional homicide and possession of a short-barreled shotgun, both as party to the crime. *See State v. Vest*, No. 1997AP1479-CR, unpublished slip op. at 1 (WI App June 18, 1998). For the homicide charge, Vest was sentenced to life in prison with a parole eligibility date of April 3, 2020. For the possession of a short-barreled shotgun charge, Vest was sentenced to two years' imprisonment, to be served concurrently with his sentence on the homicide charge. Vest was released on parole on December 14, 2021.

¶8 Maldonado appealed the judgment of conviction and an order denying his motion for postconviction relief, and we affirmed. *See State v. Maldonado*, No. 1996AP3301-CR, unpublished slip op. (WI App Mar. 5, 1998).

¶9 In December 2022, Maldonado moved to modify his sentence based on two alleged new factors: first, that Vest and Yanke had admitted that their trial testimony regarding Maldonado's role in the murder was false; and second, that Maldonado was willing to waive any further challenges to his conviction under WIS. STAT. § 974.06 (2023-24).[3] The circuit court ordered an evidentiary hearing and a briefing schedule.[4] Maldonado stated that he anticipated calling three or four witnesses to testify at the evidentiary hearing.

¶10 The day before the scheduled evidentiary hearing, the circuit court stated that it would not hear evidence and that it would instead address the parties' briefs and arguments and set an evidentiary hearing if appropriate. At the hearing, after argument from the parties, the court denied Maldonado's motion. The court concluded that Maldonado had not presented any new factors and that even if Maldonado had presented new factors, those factors did not justify a modification of Maldonado's sentence. We discuss the court's ruling in greater detail below.

¶11 Maldonado appeals, arguing that he should have been afforded an evidentiary hearing on his motion.

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

[4] The Honorable Jacqueline R. Erwin presided over Maldonado's sentencing in 1995, and the Honorable Robert F. Dehring, Jr., ruled on Maldonado's 2023 sentence modification motion. For ease of reference, we refer to Judge Erwin as "the sentencing court" and to Judge Dehring as "the circuit court."

**DISCUSSION**

¶12 Circuit courts have the authority to modify criminal sentences in certain circumstances, including when the defendant has demonstrated the existence of a "new factor." *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. A new factor is "'a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.'" *Id.*, ¶40 (quoting *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975)).

¶13 "Deciding a motion for sentence modification based on a new factor is a two-step inquiry." *Id.*, ¶36. Initially, "[t]he defendant has the burden to demonstrate by clear and convincing evidence the existence of a new factor." *Id.* If a court determines that the facts do not constitute a new factor as a matter of law, the analysis ends there. *Id.*, ¶38. However, "if a new factor is present," then the court "determines whether that new factor justifies modification of the sentence." *Id.*, ¶37. "Thus, to prevail, the defendant must demonstrate both the existence of a new factor and that the new factor justifies modification of the sentence." *Id.*, ¶38.

¶14 When evaluating whether an evidentiary hearing should be granted on a motion for sentence modification based on an alleged new factor, "the court assumes the truth of the nonconclusory facts alleged in the motion, and then determines whether, applying the substantive legal standards set forth in *Harbor* and considering the record as a whole, the defendant is not entitled to sentence modification." *State v. Schueller*, 2024 WI App 40, ¶29, 413 Wis. 2d 59, 10 N.W.3d 423. If the nonconclusory facts alleged in the motion would, if true,

constitute a new factor that might warrant sentence modification, and the circuit court, properly exercising its discretion, determines that the record does not conclusively establish that the defendant is not entitled to relief, then the defendant is entitled to an evidentiary hearing. *Id.*, ¶¶29, 48; *see also* ***State v. Grindemann***, 2002 WI App 106, ¶19, 255 Wis. 2d 632, 648 N.W.2d 507) (concluding "that a circuit court should proceed in a fashion similar to that outlined in WIS. STAT. § 974.06(3) when it receives a motion requesting sentence modification").

¶15 "Whether a fact or set of facts presented by the defendant constitutes a 'new factor' is a question of law" that we review de novo. ***Harbor***, 333 Wis. 2d 53, ¶33. "The determination of whether that new factor justifies sentence modification is committed to the discretion of the circuit court, and we review such decisions for erroneous exercise of discretion." ***Id.***

¶16 Maldonado argues that, because he sufficiently alleged facts that would entitle him to modification of his sentence, the circuit court erred in denying his motion without an evidentiary hearing. Maldonado contends that there are two new factors that justify modification of his sentence. The first alleged new factor is that Vest has admitted that it was he who shot Ruben.[5] The second alleged new factor is Maldonado's willingness to waive any further challenges to his conviction under WIS. STAT. § 974.06. We conclude that the circuit court erred in determining, without holding an evidentiary hearing, that

---

[5] At times Maldonado treats both Vest's admissions and statements that Yanke made to a fellow inmate, Gabriel Alwin, as collectively constituting a new factor. However, Maldonado concedes that he was aware of Yanke's statements to Alwin at the time of sentencing: Maldonado learned of Yanke's statements after Maldonado's investigator interviewed Alwin in April 1995, some two months before Maldonado was sentenced. Maldonado also concedes that, as a result, Yanke's statements are not a new factor. We frame our discussion of Maldonado's arguments consistent with this concession, and treat Vest's admissions as the alleged new factor.

Vest's admissions are not a new factor and that the court erroneously exercised its discretion when it determined, without a hearing, that Vest's admissions would not justify modifying Maldonado's sentence. We additionally conclude that Maldonado's willingness to waive future postconviction challenges is not a new factor. Accordingly, we reverse the court's denial of Maldonado's motion as to Vest's alleged admissions and remand for further proceedings consistent with this opinion, and we affirm the court's denial of Maldonado's motion for sentence modification as to Maldonado's willingness to waive future postconviction challenges.

*I. Vest's alleged admissions that he was the shooter.*

¶17     In Maldonado's motion, he alleges that Vest has admitted that Vest shot Ruben. In support of this allegation, Maldonado submitted several documents with his motion. Pertinent here, Maldonado submitted a letter that he allegedly received from Vest in 2019. In the letter, Vest offers to help Maldonado out if he can, and states: "I'm against affidavit for one reason but if you get me called to court for clarification on information it will come out that I was 'triggerman.'" Maldonado also submitted an affidavit from Adan Castellano, who was an inmate in the same prison cell block as Vest from 1999 to 2001. Castellano avers, in pertinent part:

> 4. Vest told me that Maldonado did not have anything to do with the death of Diane Borchardt's husband. Vest said he blamed Maldonado when he got caught up in it. Vest told me that he thought that because Maldonado was young, Maldonado would only be held until he was 18 or 21, which was just a couple of years.
>
> 5. Vest told me that he was the one who shot Diane Borchardt's husband. He said he had to do it because Yanke was a coward who had to be pushed.

7

¶18 Maldonado argues that the circuit court erred in denying his motion without an evidentiary hearing because Maldonado has adequately alleged nonconclusory facts that constitute a new factor: that Vest has admitted that he was the shooter. We agree and conclude that Vest's alleged admissions, taken as true for our purposes, establish a new factor as a matter of law. We further conclude that the court erroneously exercised its discretion when it determined, without an evidentiary hearing, that Vest's alleged admissions, even if considered a new factor, do not entitle Maldonado to a modification of his sentence. Therefore, Maldonado is entitled to an evidentiary hearing on his motion.

### A. Vest's alleged admissions are a new factor.

¶19 Vest's alleged admissions, which we accept as true for the purposes of our analysis, are a new factor because they were not known by the sentencing court and because they are highly relevant to the imposition of sentence.

¶20 First, Vest's alleged admissions that he was the shooter constitute a set of facts "'not known to the trial judge at the time of original sentencing … because [they were] not then in existence.'" *See Harbor*, 333 Wis. 2d 53, ¶40 (quoting *Rosado*, 70 Wis. 2d at 288). The State argues that Maldonado would have known at the time of sentencing that Vest was the shooter. This argument misses the mark, however, in that Maldonado does not argue that the new factor is that Vest was the shooter—instead, Maldonado argues that the new factor consists of Vest's alleged admissions that he was the shooter. The State does not refute that *Vest's alleged admissions* constitute a set of facts that were not known by the sentencing court because they were not in existence at the time of sentencing. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

8

¶21 Second, if, as alleged, Vest has admitted that he was the shooter, that fact is highly relevant to the imposition of sentence. That is because the sentencing court, during Maldonado's sentencing, emphasized that Maldonado was the shooter, which was consistent with Vest's and Yanke's trial testimony. The court stated, "There are a number of people responsible for or connected to the death of Ruben Borchardt …. But, Mr. M[a]ldonado, as to all of those people, you stand apart for a number of reasons." Addressing Maldonado, the court made it clear that a significant reason for its sentence was that Maldonado was the shooter:

> [T]here is the fact that you were the direct murderer of Ruben Borchardt. We have special treatment for first offenders and there's also special consideration for that member of the conspiracy who directly commits the murder. From the evidence that we have heard at trial you, and you alone, were willing to be that direct actor. Diane Borchardt wasn't; she was shopping for someone to hire to do it. Joshua Yanke wasn't; it was never contemplated that he would. Douglas Vest was; but he changed his mind. And it was you who made that decision; was you who went into the house with the weapon; and you are the primary reason that Ruben Borchardt isn't with us today.
>
> The activities—[f]rom the testimony—regarding the events in the house further sets you apart from the other actors. The scene at the bottom of the stairs was that you were confronted with Ruben Borchardt. As far as I can tell you were face to face. And you shot him. Then, as he struggles back from the floor and pursues you, charges up the stairway – you stand your ground, you face him and shoot pointblank into another human being. This displays a coolness, calmness, singleness of purpose of an assassin….

The court later reiterated, "It is no one's fault but yours that you pulled the trigger."[6] Because of the sentencing court's emphasis on Maldonado's role, which

---

[6] Further referencing Maldonado as the shooter, the circuit court stated:

(continued)

relied on the testimony of Vest and Yanke, Vest's alleged admissions that he was the shooter are highly relevant to the imposition of sentence because they undermine Vest's and Yanke's trial testimony on which the sentencing court substantially relied.[7]

¶22 We thus conclude that Vest's alleged admissions, if true, constitute a new factor: they were not known by the sentencing court at the time of sentencing because they were not then in existence, and they are highly relevant to the imposition of sentence.

¶23 The State asserts that Maldonado has not presented a new factor because Vest's alleged admissions are uncorroborated. In support of this assertion, the State cites *State v. McAlister*, 2018 WI 34, ¶33, 380 Wis. 2d 684, 911 N.W.2d 77, and *State v. McCallum*, 208 Wis. 2d 463, 476, 561 N.W.2d 707 (1997).

¶24 In *McAlister*, our supreme court concluded that, because recantations are inherently unreliable, "[a] claim of newly discovered evidence that is based on recantation also requires corroboration of the recantation with

---

Another thing that sets you apart from the others is your conduct at the scene both immediately before and immediately after the murder of Ruben Borchardt. You displayed the attitude, the coldness that's been referred to earlier today - that this murder was a "job" for you. You, when Vest and Yanke are showing reluctance, you assert that it's time to go to work; that you arm yourself; that you plunge into the house and that you prepare to do the "job" as you describe it.

[7] Maldonado argues that only Vest and Yanke testified at Maldonado's trial as to Maldonado being the shooter, which the State does not refute. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

additional newly discovered evidence." *McAlister*, 380 Wis. 2d 684, ¶33 (footnote omitted). The *McCallum* court similarly stated, "The rule is that newly discovered recantation evidence must be corroborated by other newly discovered evidence." *McCallum*, 208 Wis. 2d at 476. We observe that the *McAlister* court was addressing a motion for a new trial under WIS. STAT. § 974.06 based on newly discovered evidence, *McAlister*, 380 Wis. 2d 684, ¶25, and the *McCallum* court was addressing a motion to withdraw a plea and whether there was newly discovered evidence that sufficiently established that a manifest justice had occurred, *McCallum*, 208 Wis. 2d at 472-73. The State does not develop an argument as to why the corroboration rule should apply in the context of a motion for sentence modification, nor does the State provide any authority applying the corroboration rule in this context.[8] Therefore, we could reject the State's assertion on that basis alone. *See Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments."); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."). In any event, however, Vest's recantation in his letter to Maldonado is corroborated by Castellano's averments in his affidavit. Castellano's affidavit is from March 2011, Castellano's averments concern statements that Vest made to Castellano in 1999 to 2001, and Maldonado was sentenced in 1995, which means that Castellano's affidavit is newly discovered evidence that corroborates Vest's recantation in his letter to Maldonado.

---

[8] Additionally, beyond the State's failure to develop an argument that the corroboration requirement applies to Maldonado's motion for sentence modification, the State generally fails to develop an argument that Vest's alleged admissions are uncorroborated.

¶25 Relatedly, the State asserts that Maldonado has not presented a new factor because Vest's alleged admissions are unsworn. However, the State provides no legal support for this assertion, and we reject it on that basis. *See Pettit*, 171 Wis. 2d at 646. Moreover, the State's assertion that these statements must be sworn does not square with our obligation to accept as true the nonconclusory facts alleged in Maldonado's motion for purposes of determining whether Maldonado is entitled to an evidentiary hearing on his motion. *See Schueller*, 413 Wis. 2d 59, ¶29.

¶26 The State also argues that the documents submitted by Maldonado in support of his motion are not clear and convincing evidence of a new factor. However, although it is ultimately Maldonado's burden to prove by clear and convincing evidence the existence of a new factor that might warrant sentence modification, Maldonado was not required to do so through his motion and accompanying documents. *See id.*, ¶¶27, 29, 48. Instead, in order to be entitled to an evidentiary hearing on his motion, Maldonado needed to allege nonconclusory facts that, if true, would constitute a new factor that might warrant sentence modification. *See id.*, ¶¶29, 46. It is at the evidentiary hearing—at which, as stated, Maldonado intended to have Vest testify—that Maldonado must prove by clear and convincing evidence that Vest has admitted that he was the shooter. *See id.*, ¶¶27, 29, 48.

> *B. The circuit court erroneously exercised its discretion when it determined, without a hearing, that Vest's admissions would not justify modifying Maldonado's sentence.*

¶27 The circuit court determined that, even if Vest's admissions were a new factor, they would not justify modifying Maldonado's sentence. The court reached its determination without considering the extent to which the sentencing

court relied on Vest's and Yanke's testimony that Maldonado was the shooter and, in part, because of inconsistencies in the affidavits supporting Maldonado's motion. We quote at length the relevant part of the court's ruling:

> Even if the Court is in error about whether the recantations are new factors, these documents do not justify sentence modification because the documents contradict each other in multiple ways; they are cumulative evidence of Yanke and Vest's already questionable credibility, which the transcripts indicate that [the sentencing court] was well aware of; and the other sentencing factors cited by [the sentencing court].

> The documents contradict each other in at least three major areas, including the motivation to commit the crime, Maldonado's involvement, and the motive to blame Maldonado. The contradictions make the documents unreliable. Holding an evidentiary hearing for testimony about whether a coactor was telling the truth then or telling the truth now would not make the documents any less unreliable or suspicious.

> Again, the only sworn statements by Yanke and Vest are their trial testimony. This means that the recantation documents are, at best, inconsistent statements and simply go to Yanke's and Vest's credibility, which was already an issue at trial.

> Yanke made a deal on his case and testified against Maldonado. His credibility issues were already known to [the sentencing court], who, of course, was there at the trial. A further inconsistent statement made by Yanke in prison does not move the dial.

> [The sentencing court] was also aware of Vest's significant credibility issues and his disclosure made five years after sentencing, in prison to another inmate, does not move the dial in justifying sentence modification.

> [The sentencing court], in sentencing Mr. Maldonado, focused on the gravity of the offense, a Class A felony, the most serious offense there is by classification. This applies to the defendant regardless of any inconsistent statements.

> [The sentencing court] focused on the defendant's easy access to the murder weapon, including that

Maldonado was not naive in the ways of the criminal world, despite being a first offender. This also stands apart from who was the direct shooter in the case. [The sentencing court] cited the defendant's complete denial of participation or responsibility as an aggravating factor.

Most importantly, [the sentencing court] found that seven different witnesses' testimonies were credible, corroborative, and compelling enough to find … the defendant's … defense incredible and an aggravating factor. So in other words, two witnesses who have had credibility problems in the past recanting does not erase that there were five other witnesses that supported the conviction.

Finally, [the sentencing court] observed and assessed the defendant's character and danger to the public and that what [the sentencing court] described as coldness gave the Court concern about Mr. Maldonado's future in the community. This Court gives credence to [the sentencing court's] credibility determination and the new factors certainly do not frustrate the purpose of [the sentencing court's] sentence.

[The sentencing court] also gave credit for mitigating factors such as Mr. Maldonado's young age and lack of parenting structure.

¶28 "A circuit court erroneously exercises its discretion when it fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." *Borreson v. Yunto*, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656. We conclude that the circuit court erroneously exercised its discretion when it determined, without holding an evidentiary hearing, that Vest's alleged admissions, if true, would not justify a modification of Maldonado's sentence.

¶29 First, the circuit court erroneously exercised its discretion by failing to consider the extent to which the sentencing court relied on Maldonado's role in the murder, which was based solely on Vest's and Yanke's testimony. For example, the circuit court stated that "the recantation documents are, at best,

inconsistent statements and simply go to Yanke's and Vest's credibility, which was already an issue at trial." Similarly, the circuit court stated that Yanke's "credibility issues were already known to" the sentencing court, and that the sentencing court "was also aware of Vest's significant credibility issues." However, Vest's alleged admissions do more than provide cumulative evidence of general credibility concerns regarding Vest's and Yanke's testimony: Vest's alleged admissions call into question the specific testimony from Vest and Yanke regarding Maldonado's role in the murder, testimony that was otherwise unrebutted at trial, and testimony that the sentencing court, as readily apparent from its comments during sentencing, found credible and relied on at sentencing.

¶30 Relatedly, the circuit court stated that, "[m]ost importantly," the sentencing court "found that seven different witnesses' testimonies were credible, corroborative, and compelling," and that "two witnesses who have had credibility problems in the past recanting does not erase that there were five other witnesses that supported the conviction." However, this does not account for the fact that, in sentencing Maldonado, the sentencing court relied heavily on Maldonado's role in the shooting, which was based solely on the testimony of Vest and Yanke, and which, aside from Maldonado's testimony denying all involvement in the murder, was not rebutted at trial by any of the other witnesses' testimony. By failing to consider the extent to which the sentencing court relied on Vest's and Yanke's testimony regarding Maldonado's role in the shooting in determining Maldonado's sentence, the circuit court erroneously exercised its discretion in that it failed to examine all of the relevant facts in the record.

¶31 Additionally, the circuit court stated that the documents that Maldonado submitted in support of his motion "contradict each other in at least three major areas," and that "[t]he contradictions make the documents unreliable."

The court stated, "[H]olding an evidentiary hearing for testimony about whether a coactor was telling the truth then or telling the truth now would not make the documents any less unreliable or suspicious." However, the court was required to assume the truth of the nonconclusory facts alleged in Maldonado's motion for purposes of determining whether an evidentiary hearing should be held. *See Schueller*, 413 Wis. 2d 59, ¶¶29, 49. Here, Maldonado alleged, in a nonconclusory fashion, that Vest had admitted that Maldonado was not the shooter and that Vest was in fact the shooter, and the court was thus required to assume the truth of these allegations for purposes of determining whether Maldonado was entitled to an evidentiary hearing. *See id.*, ¶29. To the extent that the circuit court questioned the credibility of Vest's alleged admissions because of inconsistencies in the supporting documents, any credibility concerns regarding the truth of Vest's alleged admissions that would bear on whether sentence modification was justified should have been resolved after an evidentiary hearing. *See State v. Reynolds*, 2005 WI App 222, ¶7, 287 Wis. 2d 653, 705 N.W.2d 900 ("An evidentiary hearing is needed to resolve most credibility issues."); *see also Ruiz v. State*, 75 Wis. 2d 230, 232, 249 N.W.2d 277 (1977) ("Even though there be glaring discrepancies in the testimony of a witness at trial, or between his trial testimony and his previous statements, that fact in itself does not result in concluding as a matter of law that the witness is wholly incredible.").

¶32 In sum, we conclude that the circuit court erred in determining, without an evidentiary hearing, that Vest's admissions are not a new factor, and that even if they were a new factor, the record conclusively establishes that a modification of Maldonado's sentence would not be warranted. Therefore, we reverse and remand for an evidentiary hearing on Maldonado's motion.

16

*II. Maldonado's willingness to waive future postconviction challenges.*

¶33　The second new factor that Maldonado identifies in his motion for sentence modification is his willingness to waive any further challenges to his conviction under WIS. STAT. § 974.06 in order to provide closure to the Borchardt family.[9]　The circuit court concluded that this is not a new factor because it is not highly relevant to the imposition of sentence.　The court alternatively determined that, even if Maldonado's waiver was a new factor, it would not justify modifying Maldonado's sentence.

¶34　We agree with the circuit court's conclusion that Maldonado's proposed waiver is not a new factor.　Specifically, Maldonado fails to persuade us that his willingness to waive further challenges to his conviction is highly relevant to the imposition of sentence.　*See Rosado*, 70 Wis. 2d 280, 288 (defining "a new factor" as "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing").　Maldonado cites case law which states that the waiver of important constitutional rights, like the Fifth Amendment right against self-incrimination and the Sixth Amendment right to a jury trial, is a mitigating factor that is highly relevant to the imposition of sentence.　*See State v. Provo*, 2004 WI App 97, ¶18, 272 Wis. 2d 837, 681 N.W.2d 272 ("[A] guilty plea can often be a mitigating factor in the sentencing process."); *Scales v. State*, 64 Wis. 2d 485, 496, 219 N.W.2d 286 (1974) ("[A] posttrial confession of guilt and an expression of remorse may be considered in mitigation of a sentence."); *Jung v. State*, 32 Wis. 2d 541, 550, 145 N.W.2d 684

---

[9] Maldonado asked to make the waiver on the record at the hearing on his motion for sentence modification.　The circuit court did not allow him to do so, but stated that it would "accept it as true that if I put him under oath right now that he'd go ahead and make that waiver."

(1966) ("It is common knowledge there is a wide practice in the courts of this country of accepting pleas of guilty and giving lighter sentences than are generally given for the same crime after a trial.").

¶35    Relying on this case law, Maldonado argues that the waiver of constitutional rights in these cases is analogous to his proposed waiver of future postconviction challenges on constitutional grounds. We disagree. Not all waivers are equal, and the waiver of constitutional rights that is attendant with accepting a plea agreement or admitting guilt at sentencing is not analogous to Maldonado's proposed waiver of the right to challenge his conviction. The relevance of a waiver to the imposition of sentence depends on the significance of the right being waived, and Maldonado fails to persuade us that the right to raise a postconviction challenge, which may or may not have merit,[10] and which comes some 30 years after his conviction, is a significant enough right to render its waiver highly relevant to the imposition of sentence. We further question, as did the circuit court, how much closure such a waiver might provide to the Borchardt family. Finally, Maldonado does not provide any legal authority to support his assertion that a waiver of future postconviction challenges such as his proposed waiver constitutes a new factor that might justify a sentence modification. *See* **Pettit**, 171 Wis. 2d 627, 646. Because we conclude that Maldonado's proposed waiver is not, as a matter of law, a new factor, we affirm the court's denial of Maldonado's motion for sentence modification as to this alleged new factor.

---

[10] With his motion to modify his sentence, Maldonado submitted a 67-page-long "draft" motion for postconviction relief under WIS. STAT. § 974.06, which contains the postconviction challenges he proposes to waive. The State asserts that the arguments raised in Maldonado's draft motion are barred under **State v. Escalona-Naranjo**, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994), because Maldonado did not raise them in his earlier appeal.

## CONCLUSION

¶36    We reverse the circuit court's denial of Maldonado's motion for sentence modification as it relates to Vest's alleged admissions, and we remand for an evidentiary hearing consistent with this opinion.  We affirm the court's denial of Maldonado's motion for sentence modification as it relates to Maldonado's willingness to waive future postconviction challenges.

*By the Court.*—Order affirmed in part and reversed in part; cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.