JUNG, Plaintiff in error, v. STATE, Defendant in error.*

*October 5—November 4, 1966.*

* Motion for rehearing denied, without costs, on January 3, 1967.

542

For the plaintiff in error there was a brief by *Lawrence D. Gillick,* attorney, and *Edward F. Neubecker* of counsel, both of Milwaukee, and oral argument by *Mr. Gillick.*

For the defendant in error the cause was argued by *Robert E. Sutton,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

HALLOWS, J.  Jung raises two issues on this appeal: (1) Did the trial court abuse its discretion in granting the state's motion to consolidate the three cases for trial over Jung's objection, and (2) did the trial court deny Jung the equal protection of the laws guaranteed by the Fourteenth amendment to the United States constitution by the sentences it imposed upon him?  On the first argu-

ment, Jung seeks a new trial. His second argument, if successful, will result only in resentencing. While the severity and the disparity of a sentence are factors which might be considered in granting a new trial in the interest of justice, the severity of a sentence or its disparity with other sentences standing alone does not ground a new trial because they do not relate to the merits of the conviction. Such error as there may be in such a sentence can be corrected through the process of resentencing by the trial court. *State v. Tuttle* (1963), 21 Wis. (2d) 147, 151, 124 N. W. (2d) 9; *State v. Woodington* (1966), 31 Wis. (2d) 151, 183, 142 N. W. (2d) 810, 143 N. W. (2d) 753.

The record discloses this is a question of consolidation of three cases for trial, although the state argues in its brief as if the problem was a question of severance. However, we think the problems are basically the same and the same principles are applicable. Whether three cases should be consolidated for trial or whether three jointly accused defendants should receive separate trials is not a question of the trial court's power but of its discretion. A trial court has power to try cases together when the defendants are charged with the same offenses arising out of the same transaction and provable by the same evidence. *State ex rel. Nickl v. Beilfuss* (1962), 15 Wis. (2d) 428, 113 N. W. (2d) 103. Whether such defendants should be tried separately or together is a matter resting in the discretion of the trial court. *Cullen v. State* (1965), 26 Wis. (2d) 652, 133 N. W. (2d) 284, certiorari denied, *Howard v. Wisconsin* (1965), 382 U. S. 863, 86 Sup. Ct. 126, 15 L. Ed. (2d) 101; 23 C. J. S., Criminal Law, p. 677, sec. 931. On appellate review, this discretion is not the subject of correction in the absence of abuse. *State v. Nutley* (1964), 24 Wis. (2d) 527, 129 N. W. (2d) 155; *Mandella v. State* (1947), 251 Wis. 502, 29 N. W. (2d) 723; *Pollack v. State* (1934), 215 Wis. 200, 253 N. W. 560. What constitutes an abuse of discre-

tion, of course, depends upon the facts of each case and although a single trial may be desirable from the standpoint of economical or efficient criminal procedure, the right of a defendant to a fair trial must be the overriding consideration. *United States v. Echeles* (7th Cir. 1965), 352 Fed. (2d) 892, 896.

When antagonistic defenses are asserted by codefendants, the demands of a fair trial require that the cases be tried separately because the defendant should not be forced to face the double burden of having to meet the attack both of the prosecutor and of his codefendant. *State v. Nutley, Mandella v. State,* and *Pollack v. State, supra.*

On this ground Jung argues the trial court abused its discretion in ordering his case consolidated with that of Watkins and Miles. At the trial, Jung defended on the ground he did not know the other defendants were planning a robbery and was not aware of what was happening on the night of May 5, 1964, until after the robbery had taken place when he was asked to drive the wounded Miles to a hospital. As his defense, Watkins claimed he became a part of the conspiracy to perpetrate the armed robbery in order to aid the police in the arrest of the members of the gang. These defenses are not intrinsically antagonistic to each other. It is true, the testimony in support of Watkins' defense indicated that Jung was present while the robbery was being planned, and that Jung's role was to be that of the driver of the getaway car, the other participants to ride in the trunk and be warned by certain signals if Jung were stopped by the police. But, when this evidence was introduced, Jung might have made a motion or a request for a severance but he did not. *State v. Nutley, supra,* at page 544.

The trial court's alleged abuse of its discretion in consolidating the cases must be viewed in light of the facts presented to it at the time the objection was made to the consolidation. The objection was in general terms, stated no reasons, and did not indicate the testimony of

Watkins or Miles which might be prejudicial to Jung. An objection to consolidation should set forth the grounds relied on and preferably should be supported by affidavit. There was no abuse of discretion in consolidating the cases for the purpose of trial and we cannot find such abuse because it ultimately turned out some unknown prejudicial testimony was introduced.

Jung next contends his right to equal protection of the laws under the Fourteenth amendment was violated in his sentencing and therefore the trial court abused its discretion. We think a violation of a constitutional right in sentencing, even though the sentence is within the statutory limits for the offense, is error. An objection to a sentence on constitutional grounds is directed not to this court's superintending power over a trial court's administration of criminal justice, but to our appellate review power.

At common law, and until 1907 in England, an appellate court had no power of any kind to review a sentence within the maximum limits and until recently this theory was followed in this state. *State v. Garnett* (1943), 243 Wis. 615, 11 N. W. (2d) 166; *State v. Sullivan* (1942), 241 Wis. 276, 5 N. W. (2d) 798; *State v. Michaels* (1938), 226 Wis. 574, 277 N. W. 157. However, in *State v. Tuttle* (1963), 21 Wis. (2d) 147, 124 N. W. (2d) 9, this court departed from that view and recognized it had appellate power to review sentences. While we did not characterize the nature of the power, we pointed out the power existed, and its exercise would be governed by a strong policy against interference with the discretion of the trial court. In *Tuttle* we cited *United States v. Wiley* (7th Cir. 1960), 278 Fed. (2d) 500, but it is to be noted in that case that the power there exercised was the appellate court's "supervisory control of the district court, in aid of its appellate jurisdiction." 278 Fed. (2d) at 503.

Usually questions involving equal protection of the laws in relation to criminal punishment are in the context of statutes providing for different punishments for differ-

ent classes of offenders. Rubin, Disparity and Equality of Sentences—A Constitutional Challenge (1966), 40 F. R. D. 55, 64. In this context it has been held equal protection of the laws requires that in the administration of criminal justice no one shall be subjected for the same offense to a greater or different punishment than that to which other persons of the same class are subjected. 21 Am. Jur. (2d), Criminal Law, p. 545, sec. 582. However, this does not mean that persons convicted of the same crime cannot be given different sentences depending upon their individual culpability and need for rehabilitation. Rubin, The Law of Criminal Correction, ch. 4, p. 115, sec. 4.

In reviewing a sentence for an abuse of discretion, we start with the presumption that the trial court acted reasonably and with the requirement that the complainant must show some unreasonable or unjustifiable basis in the record for the sentence complained of. Consequently, in the instant case there must be a showing that in determining the sentence of Jung the trial court based its determination upon factors not proper in or irrelevant to sentencing, or was influenced by motives inconsistent with impartiality. We must acknowledge that the standards guiding the imposition of criminal sentences and for testing the propriety of a sentence are not universally agreed upon. [1]

Jung argues his constitutional right to equal protection of the laws was violated, since he was given a more severe sentence [2] because he pleaded not guilty and stood trial, and that the disparity of such sentence with that

---

[1] The problems of sentencing and review are now the subject of a comprehensive study of an Advisory Committee of the American Bar Association's Committee on Minimum Standards for the Administration of Criminal Justice.

[2] Note: Because of Jung's conviction under sec. 946.62, Stats., of concealing his identity while committing armed robbery he could have been sentenced to thirty-five years on that count instead of thirty years.

of Thomas and Venson was not justified by his role in the crime or any indicated need for rehabilitation. Jung, as did Miles and Watkins who stood trial with him, received the maximum sentence of thirty years for armed robbery and consecutively the maximum sentence of thirty years for attempted murder, while Thomas on his plea of guilty received two concurrent twenty-five year sentences. Venson likewise received twenty-five years for armed robbery and was never charged with attempted murder.

On the issue of culpability, Jung points out he played a lesser role as the driver of the getaway car than Thomas who helped to plan the robbery and actually entered the supermarket with a sawed-off shotgun. Either Venson or Watkins originated the idea of the robbery and both of them cased the store on the morning of the day of the crime. Venson enlisted Thomas' help in the plot. The guns, furnished by Thomas, were transported from Racine in Venson's car. On this basis it is claimed that Jung's part in the robbery was no greater, and considerably less than, that of Thomas and Venson.

Jung had no prior criminal record and was a married man with five children. The record does not show whether Thomas and Venson had prior criminal records, but at the time of their sentencing Thomas also pleaded guilty to other unrelated counts of robbery and receiving stolen goods for which he received concurrent sentences of twenty and twenty-five years. Venson pleaded guilty to six other unrelated crimes including armed robbery and received various sentences of twenty years and fifteen years, all to run concurrently, as in the case of Thomas, with the sentence on the May 5th armed robbery. Thomas and Venson, after being sentenced, were state witnesses against Jung.

The state argues Thomas and Venson received lighter sentences because they aided in the administration of justice and their guilty pleas and willingness to testify

indicated they were willing to accept responsibility and were thus better candidates for rehabilitation. Whether these arguments are factually correct or not they raise the problem of the "bargain plea" or the "negotiated guilty plea" in relation to the Fourteenth amendment respecting codefendants who insist on their right to trial. It is common knowledge there is a wide practice in the courts of this country of accepting pleas of guilty and giving lighter sentences than are generally given for the same crime after a trial. The result of this practice and the problems involved are matters of current concern. See Newman, Pleading Guilty for Considerations: A Study of Bargain Justice, 46 Journal of Criminal Law, Criminology and Police Science (1956), 780; Ohlin and Remington, Sentencing Structure: Its Effect Upon Systems for the Administration of Criminal Justice, 23 Law and Contemporary Problems (1958), 495; Rubin, Disparity and Equality of Sentences—A Constitutional Challenge (1966), 40 F. R. D. 55, 62; Lumbard, Sentencing and Law Enforcement (1966), 40 F. R. D. 406, 413.

A forceful argument is made that inherent in the practice of awarding reduced sentences following guilty pleas is discrimination against the defendant who pleads not guilty and is more severely punished for the same crime, and who is equally in need of reformation. Unless it can be shown in each case that a guilty plea is in fact evidence of repentance and demonstrates a readiness to accept responsibility for the criminal acts, it is difficult to see how a plea of guilty should be a factor in giving a lenient sentence. It is a well-known fact there are more pleas of guilty than not guilty and more second offenders make a compromise or bargain for a guilty plea than do first offenders. These so-called deals may take the form of: (1) Pleading guilty to a reduced charge, (2) pleading guilty to the charge upon the promise or expectation of a recommendation for leniency, (3) concurrent sentences, and (4) dropped charges.

We see little justification for granting leniency to a criminal in exchange for cooperation in becoming a state's witness unless such action in fact is an expression of an incipient salutory character rather than a calculated hide-saving device. While such action on either motivation may assist the district attorney, reduce court backlogs and result in more economical administration of justice, these factors do not seem to have any direct relationship with incarceration as punishment or as a deterrent or for rehabilitation, or for protection of the public.

On the other side of the coin, it is argued that a plea of not guilty followed by conviction may justify additional punishment because: (1) It displays an uncooperative attitude, (2) the defendant presumably committed perjury, (3) the defendant asserted a frivolous defense, (4) the trial revealed circumstances of the crime which might not have been disclosed on a plea of guilty, or (5) the plea did not contribute to an efficient administration of justice. We question the validity of these reasons as a basis for increasing the severity of a sentence; certainly they may be invalid in a given case. See, The Influence of the Defendant's Plea on Judicial Determination of Sentence, 66 Yale Law Journal (1956), 204, 209.

In the instant case, although there is great disparity in the sentences, the present record does not show the trial judge in sentencing Jung after his trial based it upon any of these considerations. In this respect the facts are to be distinguished from those in *United States v. Wiley* (7th Cir. 1959), 267 Fed. (2d) 453; (7th Cir. 1960), 278 Fed. (2d) 500. The punishment imposed by the district court on Wiley was in part for his plea of not guilty and assertion of his right to a trial, and only in part for the crime of which he was convicted. As stated in the concurring opinion in the second *Wiley Case*, "A defendant in a criminal case should not be punished by a heavy sentence merely because he exercises his constitutional right

to be tried before an impartial judge or jury." 278 Fed. (2d) at 504.

The statement of the trial court in sentencing Jung shows that his plea was not a factor. The trial judge stated the robbery was carefully planned, dangerous to the public, and performed by a gang. The trial court was intent upon discouraging gang operations, especially gang-executed armed robberies. The trial judge indicated the three defendants were in open warfare with society which could not be tolerated and took calculated risks. He considered they came to the neighborhood of the supermarket as a gang and operated as a gang, and because of their association and of the nature of the crime they were equally culpable regardless of their component roles in the robbery. We cannot say the trial judge was unreasonable in considering all participants, whether they carried a gun or not, as equally guilty of armed robbery. It was an organized adventure with all participants running the calculated risk that the gun a colleague carried might necessarily be used in the perpetration of the crime. Under this theory Jung, even though he did not have a gun in his possession, was also equally culpable of the attempted murder. On this view, Thomas' sentence was too lenient, rather than Jung's being too severe.

The trial judge stated he was not sure what deterrent effect the sentences were going to have, but he imposed the sentences partly for that reason. He did not consider them excessive sentences, because under our parole system the defendant's future was not foreclosed and was in fact "flexible." In this respect we note that according to the practice of the Wisconsin parole board under sec. 57.06 (1) (a), Stats., Jung will become eligible for parole after two years while Thomas and Venson will be eligible for parole after one year. However, Jung's conditional-release date will be approximately fifteen years later than those of Thomas and Venson and for the sixty years Jung will be subject to the sentence even if paroled. Sec. 53.11 (7), Stats. 1965.

Disparity in sentencing standing alone does not violate due process, nor has it been a basis up to now for relief on other grounds in the federal courts or in this court. *Simpson v. United States* (7th Cir. 1965), 342 Fed. (2d) 643; *United States v. De Marie* (7th Cir. 1958), 261 Fed. (2d) 477. Although the disparity in the sentences is great, we do not find that the reason therefor is because Jung insisted on his right to a trial by jury. In this respect this case is unlike *Tuttle* where the record showed the insistence upon a jury trial was partly the reason for an increased sentence over that which would have been received on a plea of guilty. We do not agree with Jung's argument that because the sentence which followed the plea of guilty of Thomas and Venson is less severe than the sentence given him following his trial and conviction his sentence was necessarily caused by his insistence upon his constitutional right to a trial by jury. This is a *post hoc ergo propter hoc* argument.

Equality of treatment under the Fourteenth amendment in respect to sentencing does not destroy the individualization of sentencing to fit the individual. It requires substantially the same sentence for persons having substantially the same case histories. We find neither error in the disparity of the sentence based upon a denial of a constitutional right nor abuse of discretion based upon the severity of the sentence.

*By the Court.*—Judgment affirmed.

CURRIE, C. J. (*concurring*). I concur in the result that this is not a proper case in which this court should interfere with the trial court's exercise of discretion in sentencing plaintiff in error Jung. However, I am disturbed by some of the implications of the majority opinion.

If, where a gang of criminals combine to perpetrate a crime, it appears necessary to the state to grant immunity to one of the gang in order to secure his testimony to convict the other defendants, there is no denial of the equal-protection-of-the-laws clause of the Fourteenth

amendment in imposing sentences of imprisonment on the remaining members of the gang who are convicted. This being true, it necessarily follows that there would be no denial of equal protection of the laws to impose a lesser sentence to one of the gang who cooperates with the state without grant of immunity and testifies in favor of the state. While the record before us does not positively establish that this was the basis of the lesser sentences imposed on Thomas and Venson, it strongly suggests that this is the case.

Furthermore, I believe the two *Wiley Cases*,[1] should be restricted to their own facts. All those two cases hold is that a different sentence cannot be imposed on two defendants charged with the same crime *solely* on the basis that one pleads guilty and the other not guilty. The court took pains to point out that Wiley, who pleaded not guilty and had a trial, interposed a legal defense, so there was no possibility of his having committed perjury. In the first *Wiley Case*, the court stated:

". . . the defense certainly was not frivolous nor does it appear to have been presented in bad faith." [2]

This extract was again quoted with approval in the second *Wiley Case*.[3] One who testifies falsely in his own defense certainly acts in "bad faith."

Rehabilitation is conceded to be one of the prime factors to be considered in sentencing a person convicted of crime. Therefore, a trial judge does not abuse his discretion when he metes out a more severe sentence to such a defendant than one who admits his guilt, pleads guilty, and exhibits contrition and a desire to conform his future conduct to the requirements of law. The trial judge can well conclude that such a person needs a lesser term of imprisonment to rehabilitate himself than the

[1] *United States v. Wiley* (7th Cir. 1959), 267 Fed. (2d) 453; *United States v. Wiley* (7th Cir. 1960), 278 Fed. (2d) 500.
[2] 267 Fed. (2d) at page 456.
[3] 278 Fed. (2d) at page 504.

defendant who shows no remorse by perjuring himself in an attempt to avoid the infliction of any penalty. As I read the majority opinion it suggests that this may not be a proper basis for imposing a difference in sentence. I wholly disagree.

I am authorized to state that Mr. Justice BEILFUSS concurs in this opinion.