COURT OF APPEALS
DECISION
DATED AND FILED

November 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1856-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF4836

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMES TRAVARAS JONES,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ and MICHAEL J. HANRAHAN, Judges. *Affirmed*.

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  James Travaras Jones appeals from the judgment of conviction for two counts of possession with intent to deliver controlled substances and one count of possession of a firearm by a felon.  He also appeals from the order denying him postconviction relief.  Jones argues that trial counsel was ineffective for failing to file a motion to suppress, for failing to move for severance from his co-defendant, and for failing to object to a police detective's testimony that she knew Jones prior to this investigation.  Jones also asserts that a new trial should be granted because the detective's testimony was plain error and newly discovered evidence revealed another person confessed to ownership of the cocaine.  Upon review, we reject Jones's arguments and we affirm.

## BACKGROUND

¶2    This case arises from the police investigation of the armed robbery of Frank Almond, on January 27, 2014, of his Stradavarius 1715 Lipinski violin, valued at $6 million.  While Almond was in a parking lot after performing at a concert with the violin, a man approached, used a taser on him, and took the violin.  The police investigation focused on a suspect, Salah Salahadyn, who lived in and managed an apartment building on North 1st Street near West Locust Street in Milwaukee.  Jones was not a suspect in the violin robbery; however, he and his girlfriend lived in an apartment in the building.

¶3    Milwaukee Police Department (MPD) detectives applied for and were granted two search warrants that covered Salahadyn's apartment, the apartment building's common areas, on-site or locked storage areas, the basement, and the garage.  When the search warrants were executed in February 2014, the police worked with the building's owner, who identified vacant apartments and common areas in the building.  In the basement, police found about 15 storage

lockers, consisting of wooden slat walls forming discrete areas along a concrete block wall, that the building owner stated should have been behind a locked gate and inaccessible to the tenants. Two of the lockers were secured with separate padlocks. The building owner gave police permission to enter those locked spaces because no tenant had rights to access them.

¶4 In one of the lockers, the police found a dresser that contained clear baggies containing white powder, multiple bags containing a green leafy plant-like substance, and loose residue of white powder and green leafy substance at the bottom of the top drawer. In the corner of that locker, the police found a black backpack that contained a hard square object wrapped in plastic consistent with a kilo of cocaine. Next to the backpack, there was a yellow bag and a black bag which each contained green, leafy plant-like substances. In another corner of the locker, the police found a black bag containing a 9mm firearm and magazine on top of a shoebox, which contained clear plastic baggies and powdery-white substances. The locker also contained a dryer, in which the police found multiple clear plastic baggies of green, leafy, plant-like substances, $200 in cash, material consistent with kilo wrappers for cocaine, and t-shirts.

¶5 The criminal complaint against Jones was filed in October 2016; it detailed that after the search, the investigation transitioned to the High Intensity Drug Trafficking Area (HIDTA) task force, with Detective Jasmine Pasho responding. The complaint listed that after testing the white substances, the total weight of cocaine was 1,217 grams. After testing the green leafy substances, the total weight of marijuana was 1,601 grams. Fingerprints from the scene were tested and analyzed: Jones's fingerprint was found on the bag containing the firearm, and the fingerprints of Jones's co-defendant, Fred Ramsey, were found on a black plastic bag containing 890 grams of marijuana. DNA analysis identified

Jones's DNA on the padlock for each storage locker and a t-shirt found in the dryer near the wrappers for kilos of cocaine.

¶6      Jones was charged with (1) possession with intent to deliver cocaine, more than 40 grams, as a party to a crime, as a second and subsequent offense, and by use of a dangerous weapon; (2) possession with intent to deliver THC, between 1,000 and 2,500 grams, as a party to a crime, as a second and subsequent offense, and by use of a dangerous weapon; and (3) possession of a firearm by a convicted felon.  Ramsey was charged with possession with intent to deliver THC, between 1,000 and 2,500 grams, as a party to a crime, as a second and subsequent offense.

¶7      The case proceeded to a joined trial for Jones and Ramsey in September 2018.[1]  Trial counsel's opening arguments focused on whether the evidence would be able to prove beyond a reasonable doubt that Jones actually possessed the drugs and knew that he possessed them.  Ramsey's attorney argued that Ramsey visited Jones because they worked on music together and Ramsey did laundry in Jones's basement—washing clothes he carried in black garbage bags. The attorney asserted Ramsey's fingerprint was identified on a black garbage bag that contained two zip-top plastic bags holding a combined 890 grams of marijuana.  Ramsey's attorney argued that the materials in the storage lockers were associated with Jones, that Jones was responsible for the drugs, and the State could not prove Ramsey guilty beyond a reasonable doubt.

¶8      The State called Detective Erik Gulbrandson and Detective Keith Kopcha, who each testified about the background investigation into the stolen

---

[1] The Honorable Janet C. Protasiewicz presided over Jones's trial and sentencing.  We refer to Judge Protasiewicz as the trial court.

violin and the search warrants that led to the charges in this case. Detective Pasho assisted the State throughout trial and was seated at counsel's table. When called as a witness, she testified about HIDTA, the search for the highest-level sources of drugs flowing to Milwaukee, and tracking kilos of cocaine from various Mexican cartels. She also testified extensively about the investigation of the drugs found in the storage locker, with her testimony interspersed by testimony from analysts of the drug evidence at the scene, DNA, and fingerprints.

¶9     While Ramsey was acquitted of the charges against him, the jury found Jones guilty of all three counts. In October 2018, the trial court sentenced him to 15 years of initial confinement and 10 years of extended supervision.

¶10     In September 2020, Jones moved for postconviction relief on the basis that the evidence from the search should have been suppressed, the State relied on inadmissible and highly prejudicial police testimony, and his case should have been severed from Ramsey's case.[2]   After the circuit court[3] ordered a *Machner*[4] hearing on Jones's claims, Jones filed a supplemental postconviction motion asserting that newly discovered evidence showed that Salahadyn confessed that the cocaine found in the storage locker belonged to him and not Jones.

¶11     The circuit court held an evidentiary hearing over three dates in December 2022, February 2023, and April 2023. As witnesses, the defense called

---

[2] Jones made a fourth postconviction claim, that the trial court violated his right to be present when it removed a juror during trial. This claim was not briefed in his appeal and we consider it abandoned.

[3] The Honorable Michael J. Hanrahan presided over Jones's postconviction proceedings and denied his motion for relief. We refer to Judge Hanrahan as the circuit court.

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Salahadyn, the Milwaukee Police Department detective who interviewed Salahadyn under a proffer agreement for the return of the stolen violin, trial counsel, and Jones. In September 2023, the court, in both an oral and a written ruling, denied all of Jones's claims. Jones now appeals. Additional facts relevant to these claims will be discussed below.

## DISCUSSION

¶12 Jones makes three sets of arguments about why we should grant him a new trial. First, he asserts ineffective assistance of counsel for failing to file a motion to suppress, failing to move to sever the trial from his co-defendant, and for failing to object to a comment in Detective Pasho's testimony that he argues is inadmissible and prejudicial. Second, he asserts that the detective's comment was plain error. Third, he argues that Salahadyn's confession that the cocaine was his and not Jones's constituted newly discovered evidence. We reject each argument and address in turn below.

### I. *Ineffective assistance of counsel*

¶13 To prove a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To demonstrate deficient performance, the defendant must show that his [or her] counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting *Strickland*, 466 U.S. at 688). We employ a high degree of deference to counsel's strategic decisions and presume counsel's conduct "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To demonstrate prejudice, the defendant

6

must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant must satisfy both prongs of the *Strickland* ineffectiveness test; if the defendant makes an insufficient showing on one, we need not address the other prong. *Id.* at 697.

¶14 Whether a defendant received ineffective assistance of counsel presents a mixed question of law and fact. *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. We will uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* The court's findings of fact include credibility assessments, the circumstances of the case, and counsel's strategy and conduct. *Carter*, 324 Wis. 2d 640, ¶19. We independently review, as a question of law, whether those facts establish ineffective assistance of counsel. *State v. Domke*, 2011 WI 95, ¶33, 337 Wis. 2d 268, 805 N.W.2d 364.

### A. Motion to suppress

¶15 Jones argues that trial counsel was ineffective for failing to file a motion to suppress the evidence found in the storage lockers. He asserts that he was renting the storage lockers from Salahadyn, which provided him with a reasonable expectation of privacy in the lockers, and that the search was unlawful because the warrants did not cover the padlocked storage lockers. He asserts that trial counsel's performance was deficient and prejudicial because if the drug and gun evidence were excluded, the outcome of the proceedings would have been different.

¶16 At the *Machner* hearing, trial counsel testified that he concluded that any challenge to the warrants or the scope of the search would be defeated because "the police had apparent authority from this off-site manager who said no one is

supposed to be storing anything in those lockers, go ahead and search them, because there's no one else who has an interest in excluding you."[5] Counsel also testified that Jones never told him that he was paying to rent a storage locker or garage storage from Salahadyn. Jones testified that he believed Salahadyn had authority over the entire building, he rented two storage lockers from him, and Jones told counsel about the rental.

¶17 After the *Machner* hearing, the circuit court found trial counsel's testimony "entirely and convincingly credible," Jones's testimony to be "incredible," and that when the two conflict, the court accepted counsel's testimony over Jones's without reservation. The court found that counsel was unaware of any facts that would support a suppression motion and Jones presented no evidence that counsel failed to perform a reasonable investigation. We uphold the circuit court's credibility determinations because, based upon our examination of the record, they were not clearly erroneous. *See Carter*, 324 Wis. 2d 640, ¶46.

¶18 The State argues that trial counsel's performance cannot be considered deficient for failing to pursue suppression when he was unaware of Jones's claim that he rented the storage locker from Salahadyn. If counsel had been aware that Jones was claiming to rent the lockers—attempting to establish a reasonable expectation of privacy and standing to contest the warrant—it would

---

[5] The record reflects that the building owner, who did not live at the apartment complex, gave permission to the police to search the locked storage areas.

likely have changed the defense.[6] However, under the facts as counsel knew at the time, he had no basis to challenge the search. When we review a claim of deficient performance, we "must make 'every effort … to eliminate the distorting effects of hindsight, … and to evaluate the conduct from counsel's perspective at the time.'" *Id.*, ¶22 (citation omitted). We conclude counsel's performance was not deficient. We decline to address the prejudice prong and Jones's ineffective assistance claim with regard to suppression fails.

### B.     Detective Pasho's testimony

¶19     Jones argues that trial counsel was ineffective for failing to object or move for a mistrial when Detective Pasho made inadmissible, prejudicial comments about her knowledge of Jones.[7] We begin with the record.

¶20     The following exchange took place on the fourth day of trial:

> [THE STATE:] And have you had personal contact with James Jones and Fred Ramsey?

---

[6] To have standing to challenge a search under the Fourth Amendment, a person must have a "legitimate expectation of privacy" in the place searched. *State v. Trecroci*, 2001 WI App 126, ¶26, 246 Wis. 2d 261, 630 N.W.2d 555 (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). Establishing a reasonable expectation of privacy depends on "(1) whether the individual has exhibited an actual, subjective expectation of privacy in the area inspected … and (2) whether society is willing to recognize such an expectation of privacy as reasonable." *Trecroci*, 246 Wis. 2d 261, ¶35. Jones's Fourth Amendment-related claims rely on his subjective understanding that he was renting a space over which he then had a legitimate expectation of privacy. The State asserts this claim fails because Salahadyn did not have actual authority to rent the storage lockers and the building owner gave specific permission for the police to search the basement storage. In any case, no motion was filed before trial, and Jones's claim can only be raised through ineffective assistance of counsel. Therefore, whether Jones told trial counsel he was renting the storage locker is dispositive to our review. As "cases should be decided on the narrowest possible ground," we decline to review any additional arguments related to the Fourth Amendment, the search warrant, or suppression. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

[7] We address Jones's plain error argument regarding this issue below.

> [DETECTIVE PASHO:] Prior to this investigation, no. I was familiar with Mr. Jones.

During cross-examination, trial counsel returned to this issue, referencing "there was a little confusion" when the prosecutor asked the detective about her face-to-face contact with Jones. Detective Pasho confirmed it was during a swab for DNA testing purposes. Counsel examined the detective as follows:

> [TRIAL COUNSEL:] And that was the first time that you were physically face to face with Mr. Jones in the course of this investigation?
>
> [DETECTIVE PASHO:] In the course of this investigation. But if you're asking if I knew him prior to the investigation –
>
> [TRIAL COUNSEL:] I am not.

¶21     At the ***Machner*** hearing, trial counsel had "little independent recollection" of Detective Pasho's testimony at issue. Counsel surmised, based on the record he reviewed, that he would not have wanted the jury to hear that a drug investigator detective had any prior knowledge of Jones. But he also would not have wanted "to draw attention to something that might have slipped by quickly." Trial counsel described his theory of Jones's defense as "trying to disassociate Mr. Jones from the storage locker and incriminating evidence" because the evidence in the case was entirely circumstantial. In denying this claim, the circuit court found that the detective's comment was "vague" and not clear in what context the detective knew Jones. The circuit court found it was a reasonable, strategic decision to not draw unnecessary attention and "let the moment pass and not make a bigger issue out of it."

¶22     Jones argues that prejudice arising from Detective Pasho's comment that she knew Jones prior to this investigation was shown in closing arguments when Ramsey's attorney stated that Detective Pasho did not know Ramsey, "very

much unlike Mr. Jones who she said she knew of before this investigation." Jones argues that trial counsel was deficient for failing to object or move for mistrial.

¶23 For Jones's claim of deficient performance to succeed, he must overcome the strong presumption of reasonableness afforded to trial counsel's decisions regarding trial strategy. Jones "would need to demonstrate that counsel's decision not to object … was inconsistent with a reasonable trial strategy, that is, that it was irrational or based on caprice." *State v. Breitzman*, 2017 WI 100, ¶75, 378 Wis. 2d 431, 904 N.W.2d 93. "[W]here a lower court determines that counsel had a reasonable trial strategy, the strategy 'is virtually unassailable in an ineffective assistance of counsel analysis.'" *Id.*, ¶65 (citation omitted).

¶24 Here, trial counsel's strategy was to distance Jones from the storage locker evidence. As part of that strategy, counsel would not have wanted to draw attention to whether Detective Pasho, a HIDTA drug investigator, knew of Jones before this case. He used cross-examination to have Detective Pasho confirm that she had not met Jones until this investigation, cutting off questions when the detective referenced "prior to the investigation."

¶25 We conclude that trial counsel's strategy was not irrational or capricious. "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." *Thiel*, 264 Wis. 2d 571, ¶19 (citation omitted). In a case with purely circumstantial evidence, counsel's defense focused on reasonable doubt. The circuit court concluded that counsel's failure to object to Detective Pasho's testimony was a reasonable trial strategy to minimize attention to her comments. We conclude that trial counsel did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. Accordingly, Jones has not

made a showing that trial counsel's performance was deficient. We decline to address arguments on prejudice and conclude that this claim of ineffective assistance of counsel fails.

### C. Severance of trial with co-defendant

¶26 Jones next argues that trial counsel was ineffective for failing to move to sever his trial from Ramsey's. Both Ramsey and Jones offered a theory of defense that the State could not prove possession of the contraband. Nonetheless, Ramsey's attorney cast blame in opening and closing arguments that the drugs were solely Jones's responsibility. The State argues that Jones and Ramsey did not present irreconcilable, antagonistic defenses such that prejudice would require separate trials.

¶27 A defendant may move to sever joined counts on the basis of prejudice. WIS. STAT. § 971.12(3) (2023-24).[8] Prejudice in this context refers to the risk that "an entire line of evidence relevant to the liability of only one defendant may be treated as evidence against all defendants by the trier-of-fact simply because they are tried jointly." *State v. Nutley*, 24 Wis. 2d 527, 543, 129 N.W.2d 155 (1964). Whether to grant or deny "severance is within the sound discretion of the court." *State v. Jennaro*, 76 Wis. 2d 499, 505, 251 N.W.2d 800 (1977).

¶28 Jones relies upon *Jung v. State*, 32 Wis. 2d 541, 145 N.W.2d 684 (1966), to support his claim that he and Ramsey had antagonistic defenses, which required separate trials. "When antagonistic defenses are asserted by

---

[8] All references to the Wisconsin Statutes are to the 2023-24 version.

codefendants, the demands of a fair trial require that the cases be tried separately because the defendant should not be forced to face the double burden of having to meet the attack both of the prosecutor and of his codefendant." *Id.* at 546.

¶29    "'[M]utually antagonistic defenses,'" describes when "the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant[.]" *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001).[9] However, "[m]utually antagonistic defenses are not prejudicial *per se*." *Zafiro v. United States*, 506 U.S. 534, 538 (1993).[10]

¶30    We turn to the record.  During closing arguments, Ramsey's attorney focused on the State's lack of evidence that Ramsey was involved with drugs and ignored the innocent reason his fingerprint could be in the basement storage locker.  The attorney stated, "No one has ever seen Mr. Ramsey with drugs or involved in drug transactions or with large amounts of cash or with multiple cell phones or with flashy jewelry or with a gun[.]"  The attorney contrasted that Detective Pasho did not "have any prior knowledge of Mr. Ramsey in the course of her work, very much unlike Mr. Jones who she said she knew of before this investigation."  She also argued that Jones had exclusive control over the lockers

---

[9] The federal cases here rely upon F.R.Cr.P. 14, which generally correlates to Wis. Stat. § 971.12(3).  *See Cranmore v. State*, 85 Wis. 2d 722, 747, 271 N.W.2d 402 (Ct. App. 1978).

[10] We note that *Jung v. State*, 32 Wis. 2d 541, 145 N.W.2d 684 (1966) was issued prior to *Bruton v. United States*, 391 U.S. 123 (1968) and *Zafiro v. United States*, 506 U.S. 534 (1993).  *Bruton* impacted the development of F.R.Cr.P. 14 and Wis. Stat. § 971.12(3), both of which address relief from prejudicial joinder.  *See Cranmore*, 85 Wis. 2d at 747.  *Zafiro* then addressed that severance was not required by mutually conflicting defenses even if prejudice was shown, but instead severance was among the options for relief within the discretion of the court. *Id.*, 506 U.S. at 538-39.

and their contents; therefore, the physical evidence pointed to it being Jones's locker with Jones's drugs.

¶31 During the *Machner* hearing, trial counsel testified that he and Ramsey's attorney did not plan trial strategies together and he understood Ramsey's defense to be that his fingerprint was there innocently due to carrying his laundry in black plastic bags in that basement. He did not object to Ramsey's opening statement that described the storage lockers as Jones's because saying that the storage lockers merely had Jones's DNA and fingerprints would not be much better. He recalled being blindsided by Ramsey's attorney's closing argument labeling Jones a "drug dealer" and Ramsey an "almost innocent bystander." Counsel did not think Ramsey's defense would be antagonistic, because there was little point in blaming one person when they both faced party to a crime liability. Counsel acknowledged that in hindsight he could have objected and moved for severance at closing arguments.

¶32 To consider whether trial counsel's performance was deficient for failing to object and move for severance, we consider the merits of that motion. *See State v. Sanders*, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16. "Counsel does not perform deficiently by failing to bring a meritless motion." *Id.*

¶33 Any antagonistic defense between Ramsey and Jones does not appear to have been known prior to trial, based upon the circuit court's findings and credibility determinations after the *Machner* hearing. Examining the record during trial, we do not see a mandate for severance, such that a motion would have been merited and likely granted.

¶34 First, the jury was properly instructed that they should base their decision on the evidence, and that the attorneys' remarks are not evidence. *See*

*State v. Draize*, 88 Wis. 2d 445, 455-56, 276 N.W.2d 784 (1979) (discussing attorneys' latitude in closing arguments to address the evidence and that the jury is instructed that such arguments are not evidence). "We presume that jurors follow the instructions given by the court." *State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158.

¶35 Second, Ramsey's attorney's comments merely attempt to shift blame to Jones and away from Ramsey; however, "blame-shifting among codefendants, without more, does not mandate severance." *United States v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The primary concern is applying the evidence against one defendant against all defendants; however, this issue is less applicable where Jones faced more counts and more physical evidence was presented by the State to prosecute those counts. *See Nutley*, 24 Wis. 2d at 543. Jones has not established substantial prejudice from the joint trial. For these reasons, a motion for severance would have not been merited and we conclude trial counsel was not deficient for failing to request one.[11] *See Sanders*, 381 Wis. 2d 522, ¶29. This claim of ineffective assistance fails.

---

[11] Although trial counsel agreed that, with hindsight, perhaps he should have objected at closing arguments, that is not the test for deficiency in ineffective assistance. *See State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and consider "counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

## II.    *Plain error*

¶36    Jones also argues that Detective Pasho's referenced testimony above constituted plain error.   Plain error is an error so obvious, substantial, and fundamental that relief must be granted despite a lack of objection at the time. *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77.   We employ the doctrine of plain error sparingly, only when the defendant has been denied a basic constitutional right or the substantial impairment of a fair trial. *State v. Sonnenberg*, 117 Wis. 2d 159, 178, 344 N.W.2d 95 (1984).

¶37    Here, while Detective Pasho's comments could be read to suggest she knew Jones from a prior investigation, neither the prosecutor nor trial counsel allowed the door to open to clearly improper testimony implicating Jones's character or potential other acts.   As we consider that Jones's fair trial was not impaired or his constitutional rights denied, we conclude Jones has not shown plain error occurred.   Accordingly, his claim is denied and we do not address the second step of the plain error analysis, harmless error.   *See Jorgensen*, 310 Wis. 2d 138, ¶23.

## III.    *Newly discovered evidence*

¶38    Jones argues that Salahadyn's confession that the cocaine was his and not Jones's is newly discovered evidence that requires a new trial.   Jones's postconviction motion was accompanied by Salahadyn's affidavit attesting that he received a "couple of pounds of cocaine" in advance of a plan to steal the Stradavarius and he stored the cocaine in the storage locker he rented to Jones.

¶39    "In order to set aside a judgment of conviction based on newly[]discovered evidence, the newly[]discovered evidence must be sufficient to

establish that a defendant's conviction was a 'manifest injustice.'" ***State v. Plude***, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted). The postconviction motion must establish by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." ***State v. Love***, 2005 WI 116, ¶43, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted). If the defendant establishes those four factors, then the circuit court must determine "whether it is reasonably probable that, had the jury heard the newly discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." ***State v. Vollbrecht***, 2012 WI App 90, ¶18, 344 Wis. 2d 69, 820 N.W.2d 443.

¶40 We review the circuit court's decision to grant or deny a motion for a new trial based on newly discovered evidence under the erroneous exercise of discretion standard. *See **Plude***, 310 Wis. 2d 28, ¶31. However, whether the newly discovered evidence has a reasonable probability of resulting in a different outcome is a question of law we independently review. ***Vollbrecht***, 344 Wis. 2d 69, ¶18.

¶41 The record reflects that Salahadyn testified at an evidentiary hearing that he rented a storage locker to Jones and Jones paid for the storage by giving Salahadyn access to Jones's marijuana stored in the locker. Salahadyn testified that he was contacted by an Asian man who offered him pounds or kilos of cocaine or heroin and up to $100,000 to steal the Stradavarius violin. He stated that when the man gave him the cocaine in advance of the theft, Salahadyn decided to store it in Jones's storage locker for plausible deniability purposes. Salahadyn testified that when he was being investigated for the violin theft in 2014, he was aware that the police were looking at Jones for the drugs.

Nevertheless, Salahadyn stated he was unaware that Jones was convicted and sentenced for the cocaine until postconviction counsel contacted him in 2021. Salahadyn believed that Jones must have known that only Salahadyn would have access to the storage locker to store the cocaine there.

¶42    The circuit court raised several concerns at the hearing, with the first being whether Salahadyn needed legal counsel before testifying.  Salahadyn stated he believed that the proffer agreement he made in the violin case, which was admitted into evidence, prohibited the State from prosecuting him for the drugs.  Nevertheless, despite the agreement requiring truthful disclosure by Salahadyn, he testified that he was not "candid" with the police, he claimed he was "not at liberty to say" who gave him the cocaine, and after he returned the violin, he was "deliberately evasive" and did not give the police "completely accurate information."  When questioned about why he lied, Salahadyn stated he did not believe he was lying and he did not consider the proffer interview to be "giving sworn testimony."[12]

¶43    The State argues that Salahadyn's statement is a recantation, and as such, it requires corroboration with other newly discovered evidence.  Jones argues that Salahadyn's original proffer statement was not testimonial or sworn; therefore, his new averment is not a recantation and this analysis is unnecessary.

---

[12] The MPD detective who conducted the proffer interview in February 2014, along with other local and federal law enforcement, also testified at the hearing.  He testified that the police investigated Salahadyn's claim about being approached by an Asian man at a Thai restaurant; however, no one in the restaurant could corroborate any part of his story.  The only part of Salahadyn's story that could be corroborated by the police was that Salahadyn stole the violin.

18

¶44   "A claim of newly discovered evidence that is based on recantation also requires corroboration of the recantation with additional newly discovered evidence." *State v. McAlister*, 2018 WI 34, ¶33, 380 Wis. 2d 684, 911 N.W.2d 77 (footnote omitted).  Corroboration is shown by "a feasible motive for the initial false statement" and "circumstantial guarantees of the trustworthiness of the recantation."  *State v. McCallum*, 208 Wis. 2d 463, 477-78, 561 N.W.2d 707 (1997).

¶45   We begin with whether Jones must satisfy the corroboration requirement for newly discovered evidence that relies on a recantation.  Our supreme court and this court have not made a sworn statement a prerequisite to applying the corroboration rule, and we decline Jones's request to do so here.  *See State v. Kivioja*, 225 Wis. 2d 271, 293-94, 592 N.W.2d 220 (1999) (discussing when a recantation statement was made under oath, but the original statement to police was not); *State v. Mayo*, 217 Wis. 2d 217, 227, 579 N.W.2d 768 (Ct. App. 1998) (discussing when the original statement was trial testimony and the recantation was not sworn).  While distinguishing the defendant's burden before and after plea withdrawal—not an issue in this case—our supreme court refused to apply a rule that "recantation is *only* unreliable when both the earlier and the later statements are made under oath."  *Kivioja*, 225 Wis. 2d at 293-94.  We conclude that Salahadyn's original statement being unsworn does not preclude applying the corroboration rule to his recantation made under oath.

¶46   The circuit court found that Salahadyn's confession was a recantation because, although he did not give a sworn statement in the proffer interview, his statement was in a formal setting, in the presence of his counsel and numerous law enforcement officials, and pursuant to a signed agreement that contained multiple warnings about the importance of truthfulness.  We agree with

the circuit court's assessment and we treat Salahadyn's confession as a recantation.

¶47    When we consider the facts to corroborate Salahadyn's testimony, the recantation does not satisfy the standard to be treated as newly discovered evidence. First, Jones has not offered any "additional newly discovered evidence" to corroborate the recantation. *McAlister*, 380 Wis. 2d 684, ¶33. Second, Salahadyn did not have "a feasible motive for the initial false statement." *McCallum*, 208 Wis. 2d at 477-78. In the proffer interview, Salahadyn had been given immunity from prosecution for the narcotics found in the search for the violin. Therefore, Salahadyn could not be motivated by a desire to avoid prosecution, and in fact, being entirely truthful was in the agreement. Third, Salahadyn's testimony did not provide "circumstantial guarantees of the trustworthiness of the recantation." *Id.* The circuit court found that Salahadyn now faced no criminal liability for his testimony that he possessed the cocaine because the six-year statute of limitations on felony drug charges had expired before he signed the affidavit. Further, Salahadyn admitted he was not candid with the police at the proffer, and he still did not provide missing details about who gave him the drugs and how it came to be.

¶48    In addition to the recantation not meeting the standard, Jones has not satisfied the second prong of the newly discovered evidence test—his lack of negligence in pursuing the evidence.[13] *See Love*, 284 Wis. 2d 111, ¶43. The

---

[13] While the other three factors are not disputed, Jones argues that the State conceded that all four were satisfied by not arguing the issue to the circuit court. The record reflects that the circuit court was concerned about the second factor and it was thoroughly considered at the circuit court level. This is not an issue raised for the first time on appeal.

circuit court found that Jones was negligent in pursuing this evidence, finding "that if indeed Salahadyn put the cocaine in the storage locker, it would have been glaringly obvious to Mr. Jones that Salahadyn was the person who put it there." The court also referenced Jones's changing testimony, first that he never told trial counsel that Salahadyn could have put the cocaine in the storage locker, and later that he had told counsel about renting the locker and the cocaine. We agree and we conclude that Jones has not shown that he "used all reasonable diligence in preparing" his defense before trial. *Mickoleski v. Becker*, 252 Wis. 307, 312, 31 N.W.2d 508 (1948) (citation omitted). On this basis as well, the newly discovered evidence claim fails.

¶49 Finally, Jones argues that the circuit court erred when it concluded that Salahadyn's testimony did not satisfy the final prong, whether a "reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60. Jones argues that Salahadyn's testimony may have been flawed, but it was not incredible. The circuit court disagreed, finding Salahadyn to be an incredible witness. Jones has not shown that the court's credibility findings were clearly erroneous and we do not disturb that finding.

¶50 Jones argues that the circuit court cannot base its newly discovered evidence analysis "solely on the credibility of the newly discovered evidence." *Id.* However, "[a] finding that the recantation is incredible necessarily leads to the conclusion that the recantation would not lead to a reasonable doubt in the minds of the jury." *McCallum*, 208 Wis. 2d at 475. Accordingly, Jones is not entitled to a new trial on the basis of newly discovered evidence.

**CONCLUSION**

¶51    For the reasons stated above, we conclude that Jones is not entitled to a new trial on the basis of ineffective assistance of counsel, plain error, or newly discovered evidence.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.